J-A29001-22

2023 PA SUPER 64

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAINA ANN HELEN GRUSH | : | No. 611 WDA 2022 |

Appeal from the Order Entered May 10, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001077-2020

BEFORE: BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

OPINION BY BENDER, P.J.E.:                    **FILED: APRIL 11, 2023**

The Commonwealth appeals from the trial court's order granting Appellee Shaina Ann Helen Grush's motion to exclude the preliminary hearing testimony of Jonathan Lubinsky, who died before the matter could proceed to trial. The trial court determined that Appellee had been denied the "full and fair opportunity for cross-examination" required by law based on the Commonwealth's failure to disclose to preliminary hearing counsel three items: Lubinsky was actively supervised by Butler County's probation department; Lubinsky had pending charges; and Lubinsky's lengthy criminal record of *crimen falsi* convictions. The Commonwealth maintains that Appellee received a full and fair opportunity for cross-examination, and that her confrontation rights will be adequately served by introducing this impeachment material via other means, such as stipulations by the Commonwealth. Additionally, the Commonwealth contends that all the

material was publicly accessible, and that Appellee's counsel specifically had reason to know about the material since its office had represented Lubinsky in several of those cases. We reverse and remand.

**I.**

**Factual and Procedural History**

Appellee is currently charged with one count of criminal homicide concerning the death of Robert Wagner, who died because of a stab wound to his chest. We briefly recount the testimony set forth by the Commonwealth at the preliminary hearing. The Commonwealth called two witnesses: Lieutenant Chad Rensel and Lubinsky. Lieutenant Rensel was the affiant, and Lubinsky supplied the only testimony linking Appellee to the homicide.

Lubinsky, who was thirty-seven years old at the time of the hearing, was friends with Wagner. On June 13, 2020, he ran into Wagner at approximately 1:00 p.m. The two walked around town and returned to Wagner's apartment to drink. Lubinsky asked Wagner if he wanted to take a hit of LSD. Wagner initially deferred, but around 7:00 p.m., he asked Lubinsky for some LSD. Wagner and Lubinsky both took "one hit of acid and we went – it was 8 o'clock [when Appellee] got off work, and that's when we went and got her[.]" N.T., 8/5/20, at 8. Appellee, Lubinsky, and Wagner all returned to Wagner and Appellee's apartment. Two other men joined them, but both left around 12:30 a.m. Lubinsky stayed.

Appellee and Wagner decided around 1:45 a.m. to walk to a convenience store for cigarettes. The two had a minor dispute about

Lubinsky's tripping from the acid but Lubinsky characterized it as "nothing major." *Id.* at 10. Lubinsky stayed behind to watch Appellee's child. About fifteen minutes later, Wagner knocked on the door and said, "Fuck this. I'm leaving. I'm grabbing some beer and we're leaving here." *Id.* Lubinsky, who had planned to stay the night, began collecting his things. Appellee followed Wagner into the room, and the two continued arguing. Lubinsky heard Appellee say, "I'll stab you in the fucking face." *Id.* at 11. Wagner mocked her, saying, "With what?" *Id.* While Lubinsky and Wagner continued to gather their belongings, Appellee retrieved a knife from a drawer. Lubinsky saw her approach Wagner. Lubinsky testified, "I didn't see exactly what happened but – I don't know if Rob moved forward or anything, like, to provoke it. But I seen [*sic*] [Appellee] go like this (indicating) and then she said, 'Oh my God. Did I just do that?'" *Id.* at 12. He saw Appellee throw the knife in the sink, while Wagner moved about and was "kind of crying because … he just got stabbed." *Id.* Lubinsky testified that he was scared and grabbed his things and fled the apartment, and voluntarily checked himself into a psychiatric facility later that evening. *Id.* On cross-examination, Lubinsky admitted that he was smoking marijuana and had used LSD. *Id.* at 18. Counsel pressed Lubinsky on why he did not render aid to his friend, and elicited that Lubinsky only spoke to the police after they contacted him at the hospital. *Id.* at 21. Lubinsky agreed that he did not tell the hospital staff anything when he checked himself in to the psychiatric unit.

Appellee also elicited, among other points, from Lieutenant Rensel that Lubinsky was still a suspect, that Appellee called 911, that Appellee and Wagner professed their love to each other as Wagner was dying, that Appellee made no incriminating admissions and denied stabbing Wagner, and that "[a]t this time" the only evidence putting a knife in Appellee's hands was Lubinsky's statement. *Id.* at 33.

Lubinsky died of undisclosed causes on May 22, 2021, and Appellee filed a motion *in limine* to preclude the Commonwealth from introducing Lubinsky's testimony. Appellee argued that she was denied a full and fair opportunity to cross-examine Lubinsky based on the Commonwealth's failure to disclose three things: Lubinsky "was actively supervised by Butler County Adult Probation, had pending charges, and *crimen falsi* that was not provided to [Appellee] prior to the preliminary hearing." Motion *in limine*, 3/7/22, at unnumbered 2 ¶ 12. The pending charges were apparently for drug possession and post-dated the homicide.

The trial court held a hearing and granted the motion by order and accompanying opinion dated May 10, 2022. In its order, the trial court agreed with Appellee that **Commonwealth v. Smith**, 647 A.2d 907 (Pa. Super. 1994), was on point, particularly its statement that stipulations are "an inadequate substitute for cross-examination in a criminal setting." Order, 5/10/22, at 2 (quoting **Smith**, 647 A.2d at 914). Quoting **Commonwealth v. Bazemore**, 614 A.2d 684 (Pa. 1992), the court opined that the Commonwealth's case entirely hinged upon Lubinsky's testimony. The trial

court further concluded that the Commonwealth's claim that counsel was aware or should have been aware of Lubinsky's history was not supported by any caselaw.

The Commonwealth filed a timely notice of appeal, and the trial court filed a Pa.R.A.P. 1925(a) opinion adopting its order.[1]  The Commonwealth raises the following issues:

> I. Did the trial court commit an abuse of discretion when it granted Appellee's motion *in limine* prohibiting unavailable witness Jonathan Lubinsky's preliminary hearing testimony from being admitted as evidence at trial?
>
> II. Did the trial court misapply the law and commit an error of law when it granted Appellee's motion *in limine* prohibiting unavailable witness Jonathan Lubinsky's preliminary hearing testimony from being admitted as evidence at trial?

Commonwealth's Brief at 4.

Confrontation Clause issues present a pure question of law, and our standard of review is *de novo*.  ***Commonwealth v. Yohe,*** 79 A.3d 520, 530 (Pa. 2013); ***Commonwealth v. Stinson***, 628 A.2d 1165, 1171 (Pa. Super. 1993) (concluding that the trial court "committed an error of law in admitting the preliminary hearing testimony").

## II.

## Parties' Arguments

---

[1] The Commonwealth certified in its notice of appeal that the order will terminate or substantially handicap the prosecution, thereby making this appeal as of right pursuant to Pa.R.A.P. 311(d).

Initially, the Commonwealth argues that the cross-examination did in fact address the impeachment material, albeit in generic terms. The Commonwealth points out that the preliminary hearing transcript establishes that Lubinsky "had a criminal record and that he was on probation, as well as large amounts of information that can be used to impeach credibility and cast him in a bad light." Commonwealth's Brief at 11.

The Commonwealth also challenges the trial court's assessment that Lubinsky's testimony is critical to its case. "The [t]rial [c]ourt is not aware of all of the Commonwealth's evidence. On what is it basing its statement that the Commonwealth's entire case hinges upon the testimony of [Lubinsky]?" *Id.* at 10. While the court's ruling "would substantially handicap the Commonwealth's case[,] … it would not terminate it." *Id.*

Addressing Appellee's constitutional right to confront Lubinsky, the Commonwealth argues that the nature of whether a defendant had a full and fair opportunity to cross-examine a currently-unavailable witness calls for a case-by-case adjudication. This case "contains the unusual, but not unique, facts where [d]efense [c]ounsel was thoroughly familiar with the unavailable witness's background, and as a result conducted a fair and full and effective cross-examination." *Id.* at 13.

The Commonwealth also distinguishes *Smith*, which Appellee largely relied upon in her motion. Motion *in limine*, 3/7/22, at unnumbered 2 ¶ 16 ("Herein, we are presented with the same situation faced in *Smith*…."). As discussed in further detail *infra*, in *Smith*, the Commonwealth appealed from

an order denying the Commonwealth's motion to introduce a preliminary hearing transcript. The witness had acted as a confidential informant for the Commonwealth on several occasions and had, unbeknownst to Smith at the time of the preliminary hearing, pending robbery charges. This Court held that Smith was denied a full and fair opportunity to cross-examine and therefore affirmed the order. The Commonwealth argues that this case is readily distinguishable, as the criminal charges in **Smith** were much more serious, one of which was a robbery occurring after the controlled buy. The Commonwealth directs our attention to cases distinguishing **Smith** on the grounds that "the prior records of the unavailable witnesses unambiguously suggested ulterior motives for testifying[.]" Commonwealth's Brief at 22 (quoting **Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 544 (Pa. Super. 1995)). The Commonwealth characterizes **Smith** and **Bazemore** as cases where the criminal histories suggested "ulterior motive, special treatment or lack of credibility," none of which, in its view, apply to Lubinsky.

The Commonwealth acknowledges that Lubinsky had a lengthy criminal history, identifying eleven convictions that qualify as *crimen falsi*: burglary, two convictions for theft by unlawful taking, and eight separate convictions for retail theft. The Commonwealth argues that Appellee's counsel "was aware of at least eight, and probably all of these convictions[,] prior to the preliminary hearing." **Id.** at 19. The basis for this claim is that for eight of these convictions, the Butler County Public Defender's Office, who was appointed to represent Appellee, represented Lubinsky. Thus, Appellee's

counsel was on constructive — if not actual — notice of several of Lubinsky's *crimen falsi* convictions.  Finally, the Commonwealth adds that Lubinsky's pending charges were for a "post-Robert Wagner death drug possession case," and submits that the Commonwealth can stipulate to its resolution.  ***Id.***

Consistent with her presentation to the trial court, Appellee maintains that this case is on all fours with **Smith**.  Appellee argues that the Commonwealth's arguments that her constitutional rights to confront her accusers may be satisfied by stipulations all go towards a lack of prejudice.  However, "**Smith** specifically addressed this issue," and concluded that "as between the compelling interest of admitting the former testimony of an unavailable witness and the defendant's constitutional right to confront a witness, we find the latter paramount."  Appellee's Brief at 10 (quoting **Smith**, 647 A.2d at 914).  Responding to the Commonwealth's argument that she knew (or had reason to know) of Lubinsky's criminal history, Appellee characterizes it as "a blatant, lame attempt to shift [its] burden of disclosure to a burden of inquiry."  ***Id.*** at 10-11.

## III.

## Analysis

Introducing statements of an unavailable witness presents issues relating to both the constitutional rights of confrontation as well as evidentiary rules governing introduction of hearsay.  The relevant hearsay exception is codified at Rule of Evidence 804, which permits the introduction of former testimony if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony that:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(b)(1).

Admitting former testimony is subject to constitutional restraints arising out of the constitutional right to confront one's accusers. As established by *Crawford v. Washington*, 541 U.S. 36 (2004), where testimonial statements[2] are at issue "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. "Where the prior statement is testimonial … our Courts continue to apply the standard originally set forth in *Bazemore* to determine whether the defendant had a full and fair opportunity for cross[-]examination." *Commonwealth v. Leak*, 22 A.3d 1036, 1044 (Pa. Super. 2011).

Turning to caselaw specifically examining what qualifies as a "prior opportunity," the seminal *Bazemore* case marked the first time that our Supreme Court addressed what kind of opportunity is required "where the Commonwealth has failed to disclose relevant impeachment evidence prior to

---

[2] "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

the initial testimony[.]" **Bazemore**, 614 A.2d at 686. The Court based its holding on both the United States and Pennsylvania constitutions:

> Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. **Commonwealth v. McGrogan**, 523 Pa. 614, 568 A.2d 924 (1990) (collecting cases). However, it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding.

**Id.** at 685.

The hearsay exception requires that the witness is unavailable, and that counsel had both the opportunity and motive to develop the testimony on cross-examination. There is no dispute that Lubinsky is unavailable, and the parties accept that Appellee's motive to develop the testimony was present. The only issue is whether Appellee had a full and fair opportunity to cross-examine.

We agree with the Commonwealth that this legal conclusion largely rests on the facts. **See id.** at 688 ("Our holding is limited to the facts *sub judice*…."); **Cruz-Centeno**, 668 A.2d at 544 ("Nor do we conclude, under the circumstances of the instant case, that [the] appellant's inability to cross-examine Perez at the preliminary hearing … deprived [the] appellant of a full and fair opportunity to cross-examine Perez."); **Smith**, 647 A.2d at 915 ("Under the specific facts before us on this appeal, we affirm the trial court's order denying the Commonwealth's motion to use the transcript of Mr. Cain's preliminary hearing testimony….").

- 10 -

We begin by reviewing precedents to establish useful guideposts, starting with cases that found a deprivation of the "full and fair opportunity." In **Bazemore**, the Commonwealth called Melvin Hauser at the preliminary hearing. Bazemore's attorney was either "unaware or had not been informed that Mr. Hauser had made a prior inconsistent statement to the police; that he had a criminal record; and that the Office of the District Attorney was, at that time, contemplating the filing of criminal charges against Mr. Hauser" regarding the same incident for which Bazemore was facing charges. **Bazemore**, 614 A.2d at 685. The Commonwealth maintained that Bazemore's right to confront Hauser was satisfied on the basis that he had an opportunity to cross-examine at the prior proceeding. Our Supreme Court disagreed, explaining that "the opportunity to cross-examine must be *fair* given the circumstances of the particular matter in order for such cross-examination to be deemed adequate[.]" **Id.** at 686 (emphasis in original). The **Bazemore** Court linked the "fairness under the circumstances" inquiry to whether the testimony at issue was sufficiently reliable:[3]

> As we noted in [**Commonwealth v.**] **Mangini** [425 A.2d 734 (Pa. 1981)], the exception for admission of prior testimony is "predicated on the 'indicia of reliability' normally afforded by adequate cross-examination." But where, as here, that "indicia of reliability" is lacking, the exception is no longer applicable. **Id.** at … 739.

---

[3] We note that the "sufficiently reliable" standard derived from United States Supreme Court caselaw concerning the application of the Confrontation Clause to hearsay. Those cases were abrogated by **Crawford**. As previously noted, we continue to apply the **Bazemore** standard.

*Id.* at 687. The former testimony lacks those indicia of reliability where the defendant was not given an "adequate opportunity to test the veracity of th[e] witness" at the former hearing. *Id.* at 688.

In *Smith*, this Court affirmed a ruling barring the admission of preliminary hearing testimony of Blaine Cain, who testified that he had purchased cocaine from Smith while acting as a confidential informant. "The Commonwealth, however, had not disclosed to defense counsel that Mr. Cain had a prior criminal record or that he had a pending robbery charge." *Smith*, 647 A.2d at 909. Cain subsequently refused to testify, even after the trial court ordered him to do so based on the Commonwealth's offering use immunity. *Id.* The trial court in *Smith* noted that Cain had at least three charges dismissed in the months preceding the alleged cocaine purchase, and in fact had been charged with a robbery occurring after the drug sale but before the preliminary hearing. Those charges were dismissed before the preliminary hearing; he "had yet another robbery charge pending against him when he testified at [Smith]'s preliminary hearing." *Id.* at 910 (quoting trial court opinion). The Commonwealth conceded that it failed to disclose Cain's criminal history or his pending criminal charges but offered to stipulate to those matters. The Commonwealth additionally wished to stipulate that no deal was in place. It argued that the stipulations "provide[] the same impeachment value as would the live cross-examination of Mr. Cain at trial." *Id.* at 912.

We disagreed. A witness may be biased in favor of the Commonwealth due to a subjective expectation of leniency and "that possible bias, in fairness, *must* be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor[.]" *Id.* at 912 (quoting *Commonwealth v. Evans*, 512 A.2d 626, 631 (Pa. 1986)) (emphasis in original). As in *Bazemore,* the *Smith* Court deemed the stipulations to be an "inadequate substitute" for a full cross-examination of the witness on those matters. *Id.* at 913 (quoting *Bazemore*, 614 A.2d at 687 n.4)*.* It explained:

> Given the significance of Mr. Cain's testimony, as the *only eyewitness* in the instant case, his credibility has become a key issue for trial. Unfortunately, the unavailability of Mr. Cain's live testimony at trial forecloses [the] appellee's opportunity to put to the jury Mr. Cain's subjective expectations, if any, of a deal in exchange for his testimony in favor of the Commonwealth. [The a]ppellee has the right to explore the possibility of any coercive power, that the Commonwealth might have had over Mr. Cain, which may have been an incentive for Mr. Cain to testify favorably for the Commonwealth. *Commonwealth v. Lipscomb,* 409 A.2d 857 ([Pa. Super.] 1979). *See Commonwealth v. Johnston,* 644 A.2d 168 ([Pa. Super.] 1994) ([the] appellant granted a new trial where the Commonwealth failed to disclose a plea bargain between the Commonwealth and its only eyewitness directly linking [the] appellant to the crime charged). Notwithstanding the Commonwealth's willingness to enter stipulations of an objective nature, such stipulations are an inadequate substitute for cross-examination in a criminal setting. *See … Bazemore*[,] *…* 614 A.2d at 686. Moreover, defense counsel refused to stipulate to the existence or non-existence of Mr. Cain's subjective expectations, the nature and extent of which would go directly to his bias or interest. The potential for bias or interest on the part of this witness is a matter which [the] appellee has a right to put to the jury. Because Mr. Cain has refused to testify, [the] appellee

- 13 -

is foreclosed from exploring the bias issue. The Commonwealth's proposed stipulations are not an effective remedy for the denial of [the] appellee's right.

*Id*. at 914 (emphasis in original; citation omitted).

Additionally, **Smith** rejected the Commonwealth's argument that Cain's prison clothes should have alerted counsel to Cain's criminal background, which supports Appellee's position herein that counsel was not required to investigate whether Lubinsky had a criminal record.

We now examine cases where courts have found that a defendant had a "full and fair opportunity" despite some impediment to full impeachment concerning the witness's criminal record or potential subjective expectation of leniency. In **Cruz-Centeno**, **supra**, the appellant was convicted of third-degree homicide for the death of Ronald Johnson. The evidence indicated that Cruz-Centeno, who was sitting with Claudio Ayala, was playing with a loaded revolver when Johnson and Luis Perez walked by. Johnson asked, "What's up?", and Cruz-Centeno responded by aiming the revolver at Johnson and shooting him. When police arrived, Perez identified Cruz-Centeno as the shooter. Perez testified at the preliminary hearing but was unavailable for trial, and the Commonwealth introduced the transcript of his preliminary hearing testimony.

Cruz-Centeno argued that the trial court erred, as "he was denied the opportunity to cross-examine fully the witness at the preliminary hearing in this case." **Cruz-Centeno**, 668 A.2d at 542. Specifically, he complained that the Commonwealth "had not provided the defense with a prior inconsistent

statement[,] which Perez had made to police[,] or Perez's juvenile record, which included open charges of possession of a controlled substance, possession of a controlled substance with intent to deliver and delivery of a controlled substance." *Id.* Perez's criminal record "consisted of charges in juvenile court for possession with intent to deliver a controlled substance on which a bench warrant had been issued on March 12, 1993, four months before the witness testified at the preliminary hearing." *Id.* at 544. We concluded that the former testimony was properly admitted, stating:

> Nor do we conclude, under the circumstances of the instant case, that [the] appellant's inability to cross-examine Perez at the preliminary hearing with respect to the witness's outstanding drug charges and open bench warrant deprived [the] appellant of a full and fair opportunity to cross-examine Perez. At trial, Perez's juvenile record was introduced into evidence and was considered by the trial court in assessing the credibility of the unavailable witness. As such, the trial court was aware of the potential that Perez may have been testifying against [the] appellant out of an expectation for leniency in his own pending case. While cross-examination of Perez with respect to his pending case would have been preferable, there is nothing in the record which suggests that the Commonwealth intentionally withheld this information from the defense prior to the preliminary hearing or that it had been requested by the defense at that time.

*Id.*

We agreed with the trial court's assessment that "compar[ing] this minor, unrelated charge to the severity of the prejudicial criminal records of the witnesses in *Bazemore* and *Smith* would be a travesty of justice." *Id.* (quoting trial court opinion). We also examined the content of the cross-examination, in which counsel elicited testimony that was "consistent with

- 15 -

[the] appellant's defense at trial. Moreover, during the cross-examination of Perez at the preliminary hearing, [the] appellant was not precluded from pursuing any line of inquiry." *Id.* at 545.

In *Leak*, *supra*, the Commonwealth prosecuted Leak for several sex crimes. The victim, Quianna Martin, had a terminal illness and the Commonwealth, anticipating her unavailability at trial, arranged to videotape her preliminary hearing testimony. The hearing was continued several times due to Martin's illness, and was further delayed by Martin's incarceration in Georgia on a probation violation. Leak argued that the videotaped testimony was improperly admitted because "the Commonwealth did not provide sufficient discovery to afford him a full and fair opportunity to cross[-]examine Martin at the preliminary hearing." *Leak*, 22 A.3d at 1043. Leak identified four specific items that the Commonwealth failed to provide: (1) a statement given to police by another eyewitness; (2) medical records of Martin's treatment; (3) DNA testing showing Leak's sperm on the tail of Martin's shirt; and (4) Martin's criminal record from Georgia, including *crimen falsi* convictions.

The resolution of the first and third items is not pertinent. Regarding the second item, the prosecutor testified that he did not have the hospital records at the time of the hearing. We stated that Leak's argument was "on weak footing" in that *Bazemore* requires the denial of access, and Leak "does not explain why he couldn't have subpoenaed the records prior to the preliminary hearing." *Id.* at 1045. Additionally, Leak "failed to establish that

- 16 -

those records provided vital impeachment evidence" as, at best, the records established an inconsistency. Turning to Martin's criminal record, the trial court found at a hearing that Leak "did in fact have Martin's criminal record prior to the preliminary hearing." *Id.* at 1046. This Court also cited the transcript of Martin's videotaped testimony, which established that "Leak's counsel examined Martin about the reasons for her incarceration in Georgia, and she testified that she was incarcerated due to a violation of a sentence of probation that she was serving for a theft conviction." *Id.*

These cases establish that an inability to impeach a witness based on ignorance of a prior criminal history is not fatal to its later admission. *See also Commonwealth v. Paddy*, 800 A.2d 294, 313 (Pa. 2002) (holding that counsel was not ineffective for failing to object to introduction of former testimony; "[C]ontrary to Paddy's assertion on appeal, preliminary hearing counsel had obtained at least a portion of Roussaw's criminal history and put it to effective use."). In other words, the fact that a witness has a prior criminal history is not itself "vital" impeachment material.

With these guideposts in mind, we must decide whether the specific material at issue here is "vital." If so, Appellee was denied a full and fair opportunity to cross-examine.[4] We cannot make credibility determinations in doing so, as any impeachment material necessarily goes towards credibility,

---

[4] As detailed *infra*, at pages 24-26 of this memorandum, we decline to address whether Appellee's counsel had actual or constructive notice of Lubinsky's criminal history.

which is for the fact-finder to decide. Thus, there must be some distinguishing factor of impeachment material beyond its impact on a credibility assessment that serves to distinguish "vital" impeachment material from non-vital material. Examining the caselaw, the standard appears to be whether the Commonwealth failed to disclose material which plausibly suggests that the witness is testifying favorably in the hopes of receiving some benefit from the Commonwealth, thereby supporting a legal conclusion that the defendant lacked an adequate opportunity to develop cross-examination. As we remarked in **Cruz-Centeno**, "in both **Bazemore** and **Smith**, the prior records of the unavailable witnesses unambiguously suggested ulterior motives for testifying, and, the failure of the Commonwealth to disclose such information denied the defendants in those cases a full and fair opportunity to cross-examine the unavailable witnesses at their preliminary hearings." **Cruz-Centeno**, 668 A.2d at 544.

Ultimately, we deem this case closer to **Cruz-Centeno** and **Leak** than **Smith** and **Bazemore** for four reasons. First, we agree with the Commonwealth that, unlike in **Bazemore** and **Smith**, Lubinsky's criminal history, pending charges, and probationary status do not correspond to an unambiguous ulterior motive for Lubinsky to testify apart from his obvious motivation to exonerate himself. Obviously, Lubinsky had every reason to pin the crime on Appellee as the Commonwealth's evidence suggests that only two people could be responsible for the victim's murder. This could be said to strengthen the case for finding that Appellee lacked a "full and fair opportunity

to cross-examine" in that his credibility is paramount. But the test demands only that: a full and fair opportunity for cross-examination. It does not demand a total and comprehensive cross-examination. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." **Delaware v. Fensterer,** 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original).[5] Lubinsky's motive to

---

[5] Following this statement, the **Fensterer** Court cited **Ohio v. Roberts**, 448 U.S. 56 (1980), *abrogated by* **Crawford**, **supra**, which stated:

We need not consider whether defense counsel's questioning at the preliminary hearing surmounts some inevitably nebulous threshold of "effectiveness." In **Mancusi** [**v. Stubbs**, 408 U.S. 202 (1972)], to be sure, the Court explored to some extent the adequacy of counsel's cross-examination at the earlier proceeding. That discussion, however, must be read in light of the fact that the defendant's representation at the earlier proceeding, provided by counsel who had been appointed only four days prior thereto, already had been held to be ineffective. Under those unusual circumstances, it was necessary to explore the character of the actual cross-examination to ensure that an adequate opportunity for full cross-examination had been afforded to the defendant. We hold that in all but such extraordinary cases, no inquiry into "effectiveness" is required. A holding that every case involving prior testimony requires such an inquiry would frustrate the principal objective of generally validating the prior-testimony exception in the first place—increasing certainty and consistency in the application of the Confrontation Clause.

The statement in **Mancusi** quoted in the text indicates the propriety of this approach. To the same effect is **Mattox v. United States**, 156 U.S. [237], … 244 … [(1895)] ("The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness

exonerate himself would exist independently of the impeachment material, and cross-examination on that motivation was crucial given his status as the only other plausible suspect.[6]  But counsel had a full opportunity to explore, and did explore, that issue at the preliminary hearing.

Second, Lubinsky's *crimen falsi* convictions are largely relatively minor as the vast majority are for retail theft.  In **Cruz-Centeno**, this Court described a juvenile charge for possession with intent to deliver, on which a bench warrant was issued four months before the preliminary hearing, as much less serious than the circumstances of **Bazemore** and **Smith**.  The same point applies here.  Lubinsky's burglary charge, while a serious crime,

_____

face to face, and of subjecting him to the ordeal of a cross-examination[.]").

**Id.** at 73 n.12.  The **Mancusi** decision discussed within this footnote was cited for the "indicia of reliability" standard in **Bazemore**.  **See Bazemore**, 614 A.2d at 687 ("As we noted in **Mangini**, the exception for admission of prior testimony is "predicated on the 'indicia of reliability' normally afforded by adequate cross-examination."); **Mangini**, 425 A.2d at 739 (citing **Mancusi**).)

[6] We may have concluded otherwise if Lubinsky were the only source of evidence inculpating Appellee.  Significantly, the Commonwealth offers in its brief that Lieutenant Rensel's testimony that Lubinsky was still a suspect is no longer accurate.  "The Commonwealth would also have Lt. Rensel explain that he would consider Jonathan Lubinsky a suspect until the results of DNA [a]nalysis cleared him.  And that is what happened some months after the preliminary hearing."  Commonwealth's Brief at 21.  We cannot make any judgments about what the DNA analysis may show.  We simply accept the Commonwealth's representations as officers of the court that Lubinsky's testimony is not the only evidence linking Appellee to the murder.

is, according to the Commonwealth, from 2011.[7]  More importantly, the burglary conviction has no obvious connection to Lubinsky's motivation for testifying in the absence of a potential parole violation.  As with Lubinsky's admission to his criminal history, Lubinsky admitted that he was on probation.

The third reason, which builds off the second, is that the impeaching character of the *crimen falsi* offenses is rather minimal when one considers that Lubinsky freely admitted to having a criminal history.  The preliminary hearing transcript reveals the following exchange on direct examination.

Q.  Okay.  Now, fair to say that you didn't stay to render aid, correct?

A.  No, I did not.  I got scared.

Q.  And their apartment is pretty close to the Butler City Police Station; is it not?

A.  Yes, it is.

Q.  You didn't stop there either?

A.  No.

Q.  You didn't call 911 either?

A.  I didn't have a working phone.

Q.  You didn't attempt to call 911 or contact the police?

A.  No.

Q.  Why not?

A.  Like I said, I was scared.  I didn't know what – or what, like, I just witnessed.  I mean, I was in shock, too, so …

---

[7] The parties do not list any docket numbers.  We consulted the Commonwealth of Pennsylvania Case Management System and discovered a conviction from 2011 for criminal trespass, 18 Pa.C.S. § 3503(a)(1)(ii).

And, I mean, I'm -- with my criminal history, I really don't like police involvement anyway, so I was like – I just crossed my fingers and hoped everything was okay.

N.T., 8/5/20, at 13-14.

Lubinsky also admitted that he was on probation and that he checked himself in to a psychiatric facility instead of obtaining a phone:

Q.  In fact, you're on probation; are you not?

A.  Yes, I am.

Q.  So you leave, and where did you go from there?

A.  I walked up and down Main Street pretty much all night because I couldn't sleep and, like, I had nowhere to stay that night now that all that happened.  I just couldn't sleep because I had all that running through my head.

And then early that morning, I walked up to the hospital and 201'd[8] myself and ended up on 3 North.

*Id.* at 14.

Considering that Lubinsky freely admitted his criminal history on cross-examination, we conclude that it is unlikely that the precise details of his criminal history—where none of those convictions has any apparent connection to Appellee's charges—would have added so much value that the material must be deemed "vital."

The fourth and final reason is that Lubinsky may still be impeached via other means, including stipulations to Appellee's record of *crimen falsi* convictions.  Those convictions are obviously relevant to his truthfulness and the fact-finder's determination of whether Lubinsky's version of events is

_____

[8] A 201 refers to voluntary inpatient commitment for mentally ill persons.  50 P.S. § 7201.

credible. Indeed, the trial court's conclusion that **Smith** precludes the possibility of stipulations as an adequate substitute for direct cross-examination is inconsistent with **Cruz-Centeno**. "Perez's juvenile record was introduced into evidence and was considered by the trial court in assessing the credibility of the unavailable witness. As such, the trial court was aware of the potential that Perez may have been testifying against [the] appellant out of an expectation for leniency **in his own pending case**." **Cruz-Centeno**, 668 A.2d at 544 (emphasis added). Appellee's interpretation of **Smith** would create a *per se* rule that any pending criminal charge, no matter how minor, or any future discovery of a criminal record, even if the Commonwealth itself lacked the information, would mandate a conclusion that the defendant lacked a full and fair opportunity to cross-examine. Our precedents do not interpret **Bazemore** so broadly.

That impeachment via these other means is an adequate substitute is partially corroborated by our Supreme Court's decision in **Paddy**, which dealt with a situation where the cross-examination at the preliminary hearing only partly addressed the witness' criminal history. "[C]ontrary to Paddy's assertion on appeal, preliminary hearing counsel had obtained at least a portion of Roussaw's criminal history and put it to effective use." **Paddy**, 800 A.2d at 313. The jury learned of Roussaw's entire criminal record by stipulation of the parties. **Id.** at 314 n.13. While counsel here was unaware of Lubinsky's criminal history at all, Lubinsky admitted to having a criminal record.

We therefore conclude that the Appellee had a full and fair opportunity, in that the stipulations present an adequate substitute for her inability to cross-examine Lubinsky. Moreover, Appellee could have simply asked Lubinsky to explain what that criminal history was as it appears counsel "was not precluded from pursuing any line of inquiry" during cross-examination. *Cruz-Centeno*, 668 A.2d at 545. In terms of the "opportunity" component of the *Bazemore* formulation, preliminary hearing counsel was free to explore this matter but declined to do so.

**IV.**

We emphasize that our ruling is quite narrow: the trial court erred in excluding the evidence on the grounds that Appellee lacked a "full and fair opportunity" to cross-examine Lubinsky. Our conclusion is limited to that point, and we explicitly decline to address two other points raised by the Commonwealth: that Appellee's counsel was on constructive notice of the impeachment material and the related argument that the preliminary hearing cross-examination was constitutionally effective. We briefly elaborate on those points.

Beginning with the notice issue, it is not entirely clear if the Commonwealth asks this Court to adopt a rule that criminal records are inherently publicly available and therefore a defendant always has the required "opportunity" to confront a witness with prior convictions, or whether the Commonwealth is focusing on the particular facts of this case, in which

- 24 -

Appellee's appointed counsel worked for the Butler County Public Defender's Office, which represented Lubinsky on many of his convictions.

We find that the caselaw offers no clear answer on this issue. Our Supreme Court has held that for purposes of *Brady v. Maryland*, 373 U.S. 83 (1963), criminal histories are a matter of public record. *See Commonwealth v. Walker*, 36 A.3d 1, 10 (Pa. 2011) (approvingly citing the PCRA court's conclusion that "the victim's criminal history was a matter of public record and thus available to the defense"); *see also Commonwealth v. Tharp*, 101 A.3d 736, 752 (Pa. 2014) ("Initially, as noted by the Commonwealth and the PCRA court, [the a]ppellant's allegations relating to the suppression of medical and/or criminal records fail as they could have been obtained by subpoena from non-governmental sources.") (quoting *Commonwealth v. Spotz*, 896 A.2d 1191, 1248 (Pa. 2006) ("It is well established that no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence.") (internal citation omitted)).[9]

---

[9] Several federal courts disagree with this conclusion. *See, e.g.*, *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 290 (3d Cir. 2016) (observing that "the United States Supreme Court has never recognized an affirmative due diligence duty of defense counsel as part of *Brady*"); *United States v. Price*, 566 F.3d 900, 912 (9th Cir. 2009) (holding that nondisclosed evidence of "star witness" criminal history constituted a *Brady* violation); *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994) (concluding that the prosecution complied with *Brady* when it "diligently searched the pertinent criminal records" and disclosed that material to defense).

Insofar as **Bazemore** applies only when the Commonwealth withholds the vital impeachment evidence, it is not clear how our Supreme Court's **Brady** holdings factor into the analysis. Additionally, the **Bazemore** Court was careful to note that it was "mindful of the rules of discovery governing criminal prosecutions and by our holding today do not seek to abrogate those rules." **Bazemore**, 614 A.2d at 688. In **United States v. Ruiz**, 536 U.S. 622, 633 (2002), the United States Supreme Court held that the United States Constitution "does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." Since Pennsylvania law holds that the prosecution is under no obligation to disclose criminal history because that history is publicly accessible, it is unclear what obligations the Commonwealth has to disclose the same at a preliminary hearing, especially in cases where there is no reason to expect that the witness will become unavailable. **Cf. Paddy**, 800 A.2d at 313 ("In the present case, Paddy does not allege that the Commonwealth affirmatively withheld the information in question."). On the other hand, this point cuts both ways, as defense counsel cannot be expected in most cases to anticipate that a witness will be unavailable by the time of trial. Moreover, while counsel has a motivation to develop testimony at a preliminary hearing, credibility is not ultimately at issue during the preliminary hearing. As a result, counsel arguably has little reason to ascertain a witness' criminal history prior to a preliminary hearing. Therefore, we simply decline to address this part of the Commonwealth's argument and rest our holding on the grounds that

adequate measures exist that will protect Appellee's rights under the circumstances of this case.

Second, and relatedly, we make no finding that preliminary hearing counsel effectively cross-examined Lubinsky. *See* Commonwealth's Brief at 13 ("Defense Counsel had a full opportunity to conduct, and did in fact, conduct a full and effective cross-examination of Jonathan Lubinsky."). Whether Appellee had a "full and fair" opportunity to cross-examine Lubinsky is distinct from the question of whether that cross-examination was effective, and nothing in our opinion addresses whether counsel's cross-examination was effective. Along these same lines, the Commonwealth's argument that counsel should have known to investigate Lubinsky based on counsel's own experience would serve to undermine Appellee's confrontation rights in her individual capacity. It is not clear why Appellee should be punished due to the happenstance that her appointed counsel has special reason to know information about a witness. The Commonwealth's arguments go towards whether counsel provided effective assistance. We decline to merge the two distinct constitutional issues.

Similarly, the right to confront one's witnesses is simply one component of a defendant's ability to present a defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

Thus, our decision does not rule out the possibility that admitting the preliminary hearing testimony, while not violating Appellee's constitutional right to confront Lubinsky, may ultimately deprive Appellee of her right to present a full defense depending on whatever else occurs at trial. This appeal was taken as of right prior to any trial in this matter, and we therefore have no ability to ascertain, among other points, whether the Commonwealth's case hinges on the testimony of Lubinsky or whether whatever stipulations the Commonwealth agrees to are adequate. We therefore limit our analysis to the trial court's resolution of the ***Bazemore*** issue.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Kunselman joins this opinion.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2023