J-A03039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 793 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 18, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007898-2021

BEFORE:   BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:            **FILED MAY 27, 2026**

Appellant, Deandre Williams, appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County following his convictions in a bench trial of murder of the third-degree, possessing an instrument of crime (PIC) and recklessly endangering another person (REAP).[1] Appellant raises a single claim of trial court error in admitting the preliminary hearing testimony of an eyewitness who died prior to trial. We affirm.

The trial court summarized the main evidence at issue in this appeal:

On June 15, 2020, at around 9:00 PM, the Appellant came out of his aunt's house [in] the 2500 block of North Sydenham Street and shot Rasheed Martin as he was leaning against a car. N.T. 9/14/2021 at 8-12. Prior to the shooting, Mr. Martin attended a street party on Sydenham St. with music playing and people hanging around the block. N.T. 9/14/2021 at 15-16. While

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 907(a) and 2705, respectively.

attending this party, Mr. Martin was drinking and lighting fireworks in a lot across the street from his home. N.T. 9/14/2021 at 16-17, 26.

Mr. Martin's use of fireworks angered some of the other attendees, including the Appellant, and an argument ensued. N.T. 9/14/2021 at 18. During the course of this argument, the Appellant and two other people approached in a manner indicating a desire to fight. N.T. 9/14/2021 at 22. Mr. Martin asked the Appellant to leave him alone while preparing himself to fight back, if necessary. N.T. 9/14/2021 at 26-27.

After this interaction, the Appellant and the two other people got in a car and left. N.T. 9/14/2021 at 27-28. After this interaction, Mr. Martin and his mother remained outside and talked for approximately thirty minutes near the street. N.T. 9/14/2021 at 30. Suddenly, the Appellant came out of a nearby house and shot Mr. Martin approximately five times. N.T. 9/14/2021 at 12, 31-32. After Mr. Martin was shot, Mr. Martin's mother saw [] the Appellant running away, but focused on calling for emergency assistance for her son. N.T. 9/14/2021 at 12-13, 33.

Opinion, 7/6/25 ("Trial Court Opinion"), 2-3 (footnote omitted). The trial court's citations to notes of testimony in the above passage are all to the testimony of Brenda Clayton, the mother of the victim, at Appellant's preliminary hearing on September 14, 2021. The trial court explained:

Prior to trial, the Commonwealth filed a motion to admit the prior testimony of a now[-]unavailable witness, Brenda Clayton, due to her death. The Appellant opposed this motion claiming that Appellant's preliminary hearing counsel was not given a full and fair opportunity to cross-examine the now-unavailable witness. The court granted the Commonwealth's motion and allowed Ms. Clayton's prior testimony to be entered into evidence.

Trial Court Opinion, 1-2.

Trial commenced on January 9, 2025, immediately following the trial court's grant of the Commonwealth's motion to admit Ms. Clayton's preliminary hearing testimony at trial pursuant to Pennsylvania Rule of

Evidence 804(b)(1) and **Commonwealth v. Bazemore**, 614 A.2d 684 (Pa. 1992). [2] **See** N.T. Trial, 1/9/25, 16. At the trial, the Commonwealth entered into the record, by stipulation between the parties: the preliminary hearing testimony of Ms. Clayton; the medical examiner's report describing five gunshot wounds on the victim's body, two of which were to his torso and were fatal; crime scene photographs depicting seven fired cartridge casings found at the scene; the testimony of the detective who interviewed Ms. Clayton and presented a photographic array to her, which also was introduced; and the averment that Ms. Clayton was the only witness who was shown photographs. **See** N.T. Trial, 1/9/25, 26-29.

The Commonwealth presented only one live witness to testify at the trial: the police officer who, with his partner, arrived first at the scene of the shooting, found the victim lying in a pool of blood and took him to Temple University Hospital, where the victim was pronounced dead. **See id.**, 16-18. The officer also spoke with Ms. Clayton at the hospital and then brought her to a police station to be interviewed by a detective. **See id.**, 19. The officer did not recall if Ms. Clayton had been at the scene of the shooting when he arrived. **See id.**, 20-21. On cross-examination, defense counsel obtained confirmation of the time the officer arrived at the scene, and when he brought Ms. Clayton to speak with a detective. **See id.**, 21-24. He did not know when she arrived at Temple Hospital. **See id.**, 25. On re-direct examination, the

_____

[2] Ms. Clayton passed away between the preliminary hearing and trial. N.T. Trial, 1/9/25, 11. She was therefore unavailable for trial. Pa.R.E. 804(a)(4).

- 3 -

witness confirmed that the shooting was reported at 9:10 p.m. and the officers arrived at the scene at 9:13 p.m. *See id.*, 25-26. Appellant presented his aunt to testify to his "great reputation of not being violent." *Id.*, 31. In their summations, both defense counsel and the prosecutor focused on the credibility of Ms. Clayton. *See id.*, 32-41. The trial court found Appellant guilty of murder of the third degree, PIC and REAP, and found him not guilty of two counts of possessing a firearm.[3] *Id.*, 41.

On March 18, 2025, the trial court imposed consecutive terms of imprisonment of fifteen to thirty years for murder of the third degree and one to two years for PIC, for an aggregate term of sixteen to thirty-two years imprisonment. N.T. Sentencing, 3/18/25, 18.[4] Appellant did not file post-sentence motions. On March 20, 2025, he filed a timely notice of appeal. *See* Notice of Appeal, 3/20/25. The trial court ordered Appellant to file a concise statement of errors complained of on appeal, and Appellant complied. *See* Pa.R.A.P. 1925(b); Order Under Rule 1925(b), 3/24/25; Appellant's Statement of Errors Complained of On Appeal, 4/14/25.

Appellant raises a single question presented for our review:

> Did the trial court violate Appellant's right of confrontation under the United States and Pennsylvania Constitutions by allowing the

---

[3] Specifically, the court found Appellant not guilty of counts under 18 Pa.C.S. §§ 6105(c)(1) and 6108.

[4] The written sentencing order also directs that Appellant serve a term of one to two years' imprisonment for REAP, consecutive to the term for murder of the third degree but concurrent with the imprisonment term for PIC. *See* Order of Sentence, 3/18/25.

Commonwealth to prove the circumstances of a homicide and the identity of the perpetrator entirely through the prior testimony of a deceased witness who was never subjected to full cross-examination?

Appellant's Brief, 2.

"It is well settled that evidentiary rulings are within the sound discretion of trial courts." **Commonwealth v. DiStefano**, 265 A.3d 290, 297 (Pa. 2021). "Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion." **Id.**

An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather … where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Id.** at 298 (citation omitted).[5]

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Hearsay is not admissible," unless an exception applies. Pa.R.E. 802. Here, the applicable exception is Rule 804(b)(1) of the Pennsylvania Rules of Evidence for prior testimony of a witness, who is now

---

[5] The general rule is that a contemporaneous objection must be made to evidence admitted at trial to preserve a claim about that evidence for appeal. **See Commonwealth v. Bryant**, 855 A.2d 726, 740 (Pa. 2004). Here, Appellant raised his objections during the pre-trial motion in *limine* at which time the trial court granted the Commonwealth's motion to admit the preliminary hearing testimony. **See** N.T. Trial, 1/9/25, 12-15. The preliminary hearing testimony was entered into the trial record by stipulation. **See id.**, 28. Although Appellant did not file a post-sentence motion, "[i]ssues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues." Pa.R.Crim.P 720(B)(1)(c).

unavailable, and the prior testimony is offered against the party who had an opportunity and similar motive to develop the testimony by cross-examination. **See** Pa.R.E. 804(b)(1); **see also** 42 Pa.C.S. § 5917 (prior testimony admissible when the defendant was "present and […] had an opportunity to examine or cross-examine" the witness).

In a criminal case, as here, "[a]dmitting former testimony is subject to constitutional restraints arising out of the constitutional right to confront one's accusers." **Commonwealth v. Grush**, 295 A.3d 247, 252 (Pa. Super. 2023). "As established by **Crawford v. Washington**, 541 U.S. 36 [] (2004), where testimonial statements are at issue 'the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.'" **Id.** (quoting **Crawford**, 541 U.S. at 68; footnote omitted). In Pennsylvania, former testimony is admissible against an accused only if the defendant had a "full and fair opportunity to cross-examine" the witness. **Commonwealth v. Bazemore**, 614 A.2d 684, 687 (Pa. 1992). Whether Appellee had a full and fair opportunity to cross-examine the victim's mother is a "legal conclusion [that] largely rests on the facts." **Grush**, 295 A.3d at 252 (citing cases).

Appellant argues that his right to confrontation was violated by the trial court's admission of Ms. Clayton's preliminary hearing testimony at trial. **See** Appellant's Brief, 9. He contends that "the entire case rested on the word of a single person, but the court lacked the usual means for evaluating whether that word was credible or reliable." **Id.** "The fact-finder was effectively forced

to decide whether to credit a witness based on a 'cold record' alone, something that courts are usually very reluctant to countenance." ***Id.***, 9-10.

Appellant argues that the Confrontation Clause requires that the circumstances permitting the use of prior testimony be "necessarily narrow[,]" and cites to the section in the ***Bazemore*** decision that rejected the Commonwealth's argument that the opportunity for cross-examination alone would be sufficient to permit the use of prior testimony in a criminal trial. ***See*** Appellant's Brief, 10-11 (citing ***Bazemore***, 614 A.2d at 687). Acknowledging that the holding in ***Bazemore*** was that the opportunity for cross-examination had to be "full and fair," Appellant contends that the "rationale" of the decision was conditioned on: no limitation on the type of material that might be essential for cross-examination; extensive cross-examination was not a substitute for counsel not having vital impeachment material; it is immaterial that at the time of a preliminary hearing the Commonwealth had violated no rules or obligations by not providing vital information; and "the failure to provide potential impeachment material was especially consequential where the prosecution hinged entirely on the witness in question." ***See*** Appellant's Brief, 11-13 (emphasis omitted). Following this list, Appellant argues that the last consideration was the most important and, discussing cases applying ***Bazemore***, argues that the importance of the witness is the key factor in determining whether prior testimony may be admitted at trial, where key information had been withheld. ***See id.***, 13-16.

Seeking to apply ***Bazemore*** to the present facts, Appellant argues:

This case, like *Bazemore* and its successors, depended entirely on the testimony of Brenda Clayton, which came before the court in the form of notes of testimony from a preliminary hearing. Without it, there would have been proof of the cause and manner of death, but absolutely nothing to connect it to Mr. Williams. And just as in the *Bazemore* line, the defense was critically impaired— "hamstrung," as trial counsel put it—by its lack of essential information prior to the hearing.

Appellant's Brief, 16.

Appellant concedes, though, that his case is distinguishable from the *Bazemore* line, because his position was that Ms. Clayton was supposedly mistaken, not lying, and therefore, instead of impeachment material, he required "information from other sources—like the statements of other witnesses, autopsies or medical records, video and photographs—which, if the witness is confronted with them, may seriously, even fatally, undermine her narrative." *See id.*, 16-18. He suggests that the fact that the "variety of additional evidence at trial, including the testimony of police officers and a detective, the medical examiner's report, crime scene photographs, and the results of a photo[graphic] array," were unavailable at the preliminary hearing "meant that the defense lacked information it could have used to test the reliability of the lone eyewitness's account." *Id.*, 18. He specifically notes only two elements of Ms. Clayton's testimony that he would have explored at trial had it been possible: her speculation as to how Appellant returned to the scene to shoot the victim, since she did not see a car and so thought he came back through the alley and front door of his mother's home; and her claim that Appellant was about two feet from the victim when he shot, which was

contradicted by the medical examiner's report that disclosed "no indication" that any of the multiple gunshot wounds "were at close range." ***See*** Appellant's Brief, 18-20.[6]

Pursuant to ***Bazemore***, "the Commonwealth was not obligated to provide any particular information before the preliminary hearing, but that if it chose to withhold, it assumed the risk" of consequences "in electing not to disclose that information which is necessary to afford defense counsel the opportunity for a full and fair cross examination." Appellant's Brief, 22 (quoting ***Bazemore***, 614 A.2d at 688). Appellant concludes that his "right of confrontation, and as a result his defense, was fatally compromised because the Commonwealth, instead of being forced to live with its choice, was allowed to have it both ways" and is therefore entitled to a new trial. ***Id.***, 22.

---

[6]Appellant asserts that defense counsel at the preliminary hearing put the Commonwealth on notice by stating that, having only received Ms. Clayton's statement that morning, he was "not prepared to do anything more than a preliminary hearing [] cross-examination." Appellant's Brief, 20. He then speculates that the meaning of this statement was clear to all given the "inherently limited character of the preliminary hearing itself." ***Id.*** He contends that it meant that not only was he unable to "conduct a full cross-examination," which would encompass credibility, but also "that he was not permitted to do so." ***Id.***, 21 (emphasis omitted). The purpose of this line of argument is opaque to us. Appellant raised the necessary arguments to preserve his claim before the trial court prior to its ruling to admit the preliminary hearing testimony. ***See*** N.T. Trial, 1/9/25, 11-14. It was unnecessary to do so at the preliminary hearing. Counsel's self-declared tactical decision to not delve into possible lines of inquiry, as opposed to trying to and having an objection sustained, is not a denial of cross-examination. ***See Commonwealth v. Thompson***, 648 A.2d 315, 322 (Pa. 1994)

The trial court explained its ruling as follows:

[…] Appellant has failed to present any evidence to support a finding that [he] was denied a full and fair opportunity to cross-examine the witness. […] Appellant did not allege that the Commonwealth took any action to withhold vital impeachment evidence, nor did [he] otherwise allege that the Commonwealth sought to deny him full and fair cross-examination at the preliminary hearing. In fact, […] Appellant acknowledged, at the preliminary hearing and at trial, that the Commonwealth provided all the witness['s] prior statements before the preliminary hearing began. N.T. [Preliminary Hearing,] 9/14/2021 at 4, ("I just got [the witness's prior] statements this morning from the district attorney"); N.T. [Trial,] 1/9/2025 at 13.

This early disclosure, when combined with […] Appellant's extensive cross-examination of that witness, shows that the witness's prior testimony met the requirements of the unavailable witness exception. For a party to introduce the preliminary hearing testimony of a now unavailable witness, the defendant must have "had counsel and a full opportunity to cross-examine that witness[.]" Further, a party cannot be deprived of a witness's prior testimony, because the other party did not cross-examine as extensively as they would at trial.

Here, the Commonwealth voluntarily disclosed the witness['s] prior statements to […] Appellant prior to the preliminary hearing and did not seek to deny [him] a full and fair cross-examination. [*See*] N.T. [Preliminary Hearing,] 9/14/2021 at 4. This early disclosure meant that Appellant was provided an opportunity to extensively impeach the witness about several inconsistencies in the witness's testimony at the preliminary hearing. *Id.* In fact, […] Appellant made use of this opportunity to impeach the witness and gained several concessions from her regarding prior inconsistent statements.

This extensive cross-examination shows that the witness['s] prior testimony should be admitted as it is "predicated on the indicia of reliability afforded by adequate cross-examination." Thus, "[t]he Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as [they would have] at trial.

- 10 -

Trial Court Opinion, 5-7 (citations and footnotes omitted).

Based on our review of the available record, we discern no abuse of discretion on the part of the trial court. "[T]his Court has explained that a defendant asserting a lack of a full and fair opportunity for cross examination must establish that he or she was deprived of 'vital impeachment evidence.'" *Commonwealth v. Leak*, 22 A.3d 1036, 1044 (Pa. Super. 2011) (quoting *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 543 (Pa. Super. 1995)). Our caselaw describes vital impeachment evidence as that "which plausibly suggests that the witness is testifying favorably in the hopes of receiving some benefit from the Commonwealth, thereby supporting a legal conclusion that the defendant lacked an adequate opportunity to develop cross-examination." *Grush*, 295 A.3d at 256.[7]

Here, Appellant has not alleged that he was denied vital impeachment evidence—he concedes that he received Ms. Clayton's prior statement and any relevant criminal history—but argues instead that he was not provided the evidence the Commonwealth used at trial prior to Ms. Clayton's testimony at the preliminary hearing. *See* Appellant's Brief, 16-18. He contends that such information was necessary to protect his confrontation rights so that he could

---

[7] "[I]n both *Bazemore* and [*Commonwealth v. Smith*, 647 A.2d 907 (Pa. Super. 1994)] the prior records of the unavailable witnesses unambiguously suggested ulterior motives for testifying, and, the failure of the Commonwealth to disclose such information denied the defendants in those cases a full and fair opportunity to cross-examine the unavailable witnesses at their preliminary hearings." *Cruz-Centeno*, 668 A.2d at 544.

fully challenge the "reliability" of her account as the only eyewitness. *Id.*, 18. However, this Court has previously rejected a nearly identical argument.

In *Commonwealth v. Buford*, 101 A.3d 1182, 1195-97 (Pa. Super. 2014), we reviewed, under *Bazemore*, a challenge to the admission of preliminary hearing testimony identifying Buford as the killer. Buford argued that his "preliminary hearing counsel did not have available to him the physical evidence to corroborate [the witness's] statement such as her phone records where she makes reference to making a phone call to both [Buford] and to the decedent." *Buford*, 101 A.3d at 1197 (brackets and quotation marks in original omitted, brackets added). In addition, Buford opposed admission on the ground that his "preliminary hearing counsel did not have 'the rest of the discovery,' which deprived […] preliminary hearing counsel from having 'an idea of what other witnesses would say comparable to [the witness].'" *Id.* (brackets added, quotation marks in original). We stated:

> Based on our review of the preliminary hearing and decisional law, we find that the trial court did not abuse its discretion in admitting at trial [the witness's] preliminary hearing testimony, which included references to her identification of Appellant in her law enforcement statement. [The witness], who had known [Buford] for approximately two to three years, was clearly unavailable, her criminal record and statement to law enforcement had been provided to [Buford's] preliminary hearing counsel, and [Buford's] preliminary hearing counsel had a full and fair opportunity to cross-examine [the witness].

*Id.*

Similarly, here, the witness is deceased, and so was unavailable, she knew Appellant as he was the nephew of her neighbor, she identified him to

law enforcement in a photographic array, preliminary hearing counsel had her police statement prior to cross-examination at the preliminary hearing, and there is no claim that there was other vital impeachment evidence to be produced. Appellant, therefore, pursuant to *Buford*, had a full and fair opportunity to cross-examine Ms. Clayton at the preliminary hearing.

Rather than applying *Bazemore* and its progeny, Appellant's argument seeks to extend them beyond their stated limits. His chief complaint is that due to the nature of the preliminary hearing, and the rules that govern it, he was limited in what he could ask Ms. Clayton at that time and in that forum. But Appellant did not test that limitation by asking additional questions and was not precluded by the judge from any line of inquiry. "The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial." *Commonwealth v. Thompson*, 648 A.2d 315, 322 (Pa. 1994) (footnote omitted); *see also Commonwealth v. Wayne*, 720 A.2d 456, 466 (Pa. 1999) (affirming the admission of preliminary hearing testimony at trial of an unavailable witness who identified Wayne as a co-conspirator to murder, where unlike in *Bazemore*, Wayne was provided the witness's statement and prior criminal record before the preliminary hearing; counsel's failure to utilize them did not deprive Wayne of the opportunity for full and fair cross-examination). Moreover, *Bazemore* plainly stands for the proposition that the nature of the preliminary hearing, without

more, is not a bar to admission at trial of the prior testimony. *See Bazemore*, 614 A.2d at 687 ("Although [applicable precedent] discusses the use of prior *trial* testimony, and not prior *preliminary hearing* testimony, the distinction is irrelevant for our purposes") (emphasis in original); *Leak*, 22 A.3d at 1044-45 (applying *Bazemore* and affirming the admission of videotape of an unavailable witness's preliminary hearing testimony).

Furthermore, when asserting that vital impeachment evidence was denied at the preliminary hearing stage, it is incumbent on the party seeking to exclude prior testimony to demonstrate both that the evidence was denied and was vital. *See Leak*, 22 A.3d at 1044-1046 (examining each of four items of evidence to determine whether in each instance Leak had been denied vital impeachment evidence possessed by the Commonwealth at the time of the preliminary hearing; "[i]n this instance, once again, Leak fails to explain how this evidence amounted to vital impeachment"); *Cruz-Centeno*, 668 A.2d at 544 ("there was nothing in [the] prior statement that was so inconsistent with his testimony at [Cruz-Centeno's] preliminary hearing, as to compel a conclusion that [he] was denied the use of vital impeachment").

The two points on which Appellant claims he was denied a full and fair opportunity to cross-examine Ms. Clayton at the preliminary hearing fall far short of the level necessary to preclude the preliminary hearing testimony. The first was his stated desire at trial to further question Ms. Clayton on her belief that Appellant returned to the scene via an alleyway into the back of his mother's home and through the front door to kill the victim. *See* Appellant's

Brief, 18-19; N.T. Trial, 1/9/25, 34-35 (summation after trial evidence admitted). However, both before the trial court and this Court, Appellant has not shown that he was *prevented* from asking Ms. Clayton additional questions about her alleged speculation. As such, he was not denied an opportunity for cross-examination. He simply did not ask the questions he now wished he had, which is not a basis for excluding her preliminary hearing testimony. **See Thompson**, 648 A.2d at 322; **Wayne**, 720 A.2d at 466. With respect to the second, Appellant argues that Ms. Clayton's testimony was contradicted by the medical examiner's report in that she estimated that Appellant stood "about two feet" from the victim when he fired the gun, but there was "no indication" in the medical examiner's report that the shots were fired from close range. **See** Appellant's Brief, 19-20; N.T. Trial, 19/25, 36 (summation after trial evidence admitted). This is not an inconsistency in Ms. Clayton's testimony for which Appellant was denied the opportunity to cross-examine, but, at most, a discrepancy between Ms. Clayton's testimony and the report prepared by the medical examiner. "[T]he significance of any inconsistency between the prior testimony of an unavailable witness and a trial witness is a matter for the [fact-finder] to consider in weighing the evidence." **Leak**, 22 A.3d at 1045-46 (finding that an alleged inconsistency in the unavailable witness's preliminary hearing testimony and statements made in hospital records was not inconsistent, nor vital, and could be impeached at the trial). Therefore, a trial challenge to Ms. Clayton's preliminary hearing testimony was

not hampered by the lack of the medical examiner's report at the preliminary hearing.[8]

In sum, we find that Appellant was provided with Ms. Clayton's prior statement to the police and any criminal record history for Ms. Clayton prior to cross-examination at the preliminary hearing. Accordingly, Appellant was not denied a full and fair opportunity to cross-examine Ms. Clayton at that time, and her prior testimony was therefore admissible at trial. ***See Bazemore***, 614 A.2d at 687; ***Buford***, 101 A.3d at 1197; ***Leak***, 22 A.3d at 1044-1046; ***Cruz-Centeno***, 668 A.2d at 543-544. Appellant's arguments to the contrary seek to extend ***Bazemore***'s requirement of a full and fair opportunity for cross-examination to all possible evidence that could be inconsistent with a (subsequently) unavailable witness's preliminary hearing testimony, which is contrary to the explicit holding in ***Bazemore*** and our own precedent. ***See Buford***, 101 A.3d at 1197.

Judgment of sentence affirmed.

_____

[8] The alleged discrepancy also may not be inconsistent. Two feet is generally the furthest distance that might be considered within "close range." ***See***, ***e.g.***, ***Commonwealth v. Johnson***, 985 A.2d 915, 921 (Pa. 2009) (noting from the testimony of a forensic pathologist/assistant medical examiner that "close range" consisted of "6 inches to 2½ feet"). Thus, Ms. Clayton's estimation that Appellant was "about two feet" could include some distance greater than two feet and thereby be consistent with the lack of a finding that the shots were fired from close range. Even if her estimation was presumed to be inconsistent, it would hardly be, as Appellant contends, contrary to "the physical evidence." Appellant's Brief, 19. As such, "there was nothing […] so inconsistent […] as to compel a conclusion that [A]ppellant was denied the use of vital impeachment evidence at his preliminary hearing." ***Cruz-Centeno***, 668 A.2d at 544.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:   May 27, 2026