2022 PA Super 201

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN WILLIAM CONLEY | : | |
| | : | |
| Appellant | : | No. 935 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 15, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002061-2018

BEFORE:  NICHOLS, J., MURRAY, J., and KING, J.

OPINION BY NICHOLS, J.:                    **FILED: NOVEMBER 22, 2022**

Appellant Bryan William Conley appeals from the judgment of sentence imposed following the revocation of his county intermediate punishment (CIP) and his consecutive terms of probation.  This matter returns to this Court after we remanded for the filing of an amended **Anders**/**Santiago**[1] brief or an advocate's brief.  Appellant has filed an advocate's brief challenging both the discretionary aspects and the legality of his revocation sentence.  We vacate the judgment of sentence and remand for further proceedings consistent with this opinion.

The underlying facts of this matter are well known to the parties.  **See** Trial Ct. Op., 6/12/19, at 5-10.  Briefly, Appellant and Andrea Delsandro (the victim) separated in May of 2018 after dating for approximately five years.  At

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

the time of their separation, they had a three-year-old child, and the victim was pregnant with their second child. On June 25, 2018, the victim obtained a Protection From Abuse (PFA) order against Appellant. The victim gave birth at St. Vincent Hospital on June 27, 2018. Although Appellant had been served with the PFA order and hospital staff denied him entry, Appellant circumvented hospital security to reach the victim. During the encounter at the hospital, Appellant threatened to kill the victim, their newborn child, and the victim's father. The victim called a nurse for help, and Appellant left the victim's hospital room. The nurse alerted hospital security, and the hospital was placed on lockdown.

Appellant was subsequently charged with two counts each of terroristic threats, disorderly conduct, and harassment, and one count of simple assault.[2] Following a non-jury trial on November 28, 2018, Appellant was convicted of two counts of terroristic threats (one graded as a felony of the third degree and the other as a misdemeanor of the first degree) and one count each of simple assault, disorderly conduct, and harassment. The trial court acquitted Appellant of one count each of disorderly conduct and harassment.

The trial court held a sentencing hearing on February 13, 2019. At the hearing, Appellant argued that his misdemeanor terroristic threats and simple assault convictions should merge with the felony terroristic threats conviction.

---

[2] 18 Pa.C.S. §§ 2706(a)(1), 5503(a)(1), 2709(a)(1), and 2701(a)(3), respectively.

However, the trial court disagreed and sentenced Appellant on all three counts. The trial court sentenced Appellant to an aggregate term of four years of CIP followed by three years of probation.[3]

On direct appeal, Appellant challenged the sufficiency of the evidence supporting his convictions for terroristic threats, simple assault, and disorderly conduct. *Commonwealth v. B. Conley*, 496 WDA 2019, 2020 WL 3989174, at *4 (Pa. Super. filed July 15, 2020) (*B. Conley I*) (unpublished mem.). Ultimately, a panel of this Court concluded that the evidence was sufficient to sustain Appellant's convictions. *Id.* at *4-6. However, the Court did not address whether any of Appellant's convictions should have merged for sentencing purposes.

While he was serving his CIP sentence, Appellant was detained after admitting to his probation officer that he had been using methamphetamine.

_____

[3] Specifically, for count one, the felony terroristic threats conviction, the trial court sentenced Appellant to four years' CIP, which included a term of 205 days' incarceration followed by three months' electronic monitoring, and then followed by three months' intensive supervision. For count two, the misdemeanor terroristic threats conviction, the trial court sentenced Appellant to a consecutive term of two years' probation. For count three, simple assault, the trial court sentenced Appellant to one year of probation concurrent to count two. For count four, disorderly conduct, the trial court imposed a consecutive term of nine months' probation. Lastly, for count six, harassment, the trial court imposed a consecutive term of three months' probation. *See* Sentencing Order, 2/13/19, at 1 (unpaginated). The trial court also gave Appellant credit for ninety-nine days' time served. *See id.* at 2 (unpaginated).

On July 15, 2021, the trial court held a violation of probation[4] (VOP) hearing. Appellant conceded that he had violated the conditions of his CIP because he had used methamphetamine, and the trial court revoked his CIP and his consecutive terms of probation. *See* N.T. VOP Hr'g, 7/15/21, at 4. Both Appellant and his probation officer, Ashley Clark, testified at the VOP hearing. *Id.* at 6-10, 13-16. Officer Clark stated that Appellant had accrued twenty-five misconducts while incarcerated. *Id.* at 6-7. She also stated that she had received letters from Appellant containing sexual messages. *Id.* at 7-8; *see also id.* at 12-13. Appellant admitted that he sent those letters to Officer Clark, but he claimed that he had "acted out of character to be noticed[,]" because the prison authorities had mistreated him, and he apologized to Officer Clark during the hearing. *Id.* at 8-11, 14. At the conclusion of the hearing, the trial court resentenced Appellant to an aggregate term of three-and-a-half to seven years' incarceration followed by one year of probation.[5]

---

[4] During the revocation portions of the proceedings on July 15, 2021, the trial court and parties referred to Appellant's sentence as probation, even though he was serving his CIP sentence at that time. *Compare* N.T. VOP Hr'g, 7/15/21, at 2-4 *with id.* at 16 *and* Sentencing Order, 2/13/19, at 1 (unpaginated). As discussed further below, at the time of the VOP hearing, the General Assembly had reclassified CIP as a form of probation with restrictive conditions. *See* 42 Pa.C.S. § 9804(a) (am. eff. Dec. 18, 2019). However, for consistency, we refer to the original sentence imposed at count one as CIP.

[5] Specifically, the trial court imposed consecutive terms of incarceration as follows: two to four years for felony terroristic threats, one to two years for the misdemeanor terroristic threats, and six months to one year for simple assault. The trial court also reimposed consecutive terms of probation as

*(Footnote Continued Next Page)*

Appellant filed a timely post-sentence motion requesting reconsideration and modification of his sentence, which the trial court denied. Appellant then filed a timely appeal and court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's challenge to the discretionary aspects of his sentence. *See* Trial Ct. Op., 12/20/21, at 6-9.

As noted previously, this case returns to this Court after we remanded for the filing of an amended ***Anders***/***Santiago*** brief or an advocate's brief. ***Commonwealth v. B. Conley***, 935 WDA 2021, 2022 WL 3151832, at *10 (Pa. Super. filed Aug. 8, 2022) (***B. Conley II***) (unpublished mem.).

On appeal, Appellant has filed a counseled advocate's brief raising three issues, which we have reordered as follows:

1. Did the [trial] court err in its revocation of the sentences of probation, when they had not yet started at the time of [Appellant's] violation?

2. Did the [trial] court commit[] reversible error in failing to merge the felony and misdemeanor counts [of terroristic threats] for purposes of sentencing [Appellant]?

3. Did the [trial] court commit reversible error in that its sentence was manifestly excessive and clearly unreasonable, and not individualized as required by law, when it did not refer to having reviewed a pre-sentence investigation at the time of sentencing?

Appellant's Brief at 3.[6]

---

follows: nine months for disorderly conduct and three months for harassment. *See* Sentencing Order, 7/15/21, at 1 (unpaginated).

[6] The Commonwealth did not file a responsive brief.

**Revocation of Consecutive Probation**

Appellant first argues that the trial court lacked the authority to revoke his probation, because at the time the trial court revoked his CIP sentence, he had not begun serving his consecutive terms of probation. *Id.* at 16-17 (citing *Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. 2021) (*en banc*)). Appellant contends that although *Simmons* did not address the revocation of probation that runs consecutive to a term of CIP, the same rationale applies to his case. *Id.* Therefore, Appellant concludes that the trial court's VOP sentence is illegal under *Simmons*. *Id.*

"It is axiomatic that a sentence imposed without statutory authority is an illegal sentence." *Commonwealth v. K. Conley*, 266 A.3d 1136, 1140 (Pa. Super. 2021) (citation omitted). Challenges to the legality of the sentence are non-waivable and may be raised for the first time on appeal. *See Commonwealth v. Martinez*, 153 A.3d 1025, 1030 n.2 (Pa. Super. 2016). Our standard of review is *de novo* and our scope of review is plenary. *Id.* at 1030. "An illegal sentence must be vacated." *Commonwealth v. Tucker*, 143 A.3d 955, 960 (Pa. Super. 2016) (citation omitted).

Initially, we reiterate that the trial court imposed Appellant's original CIP sentence in February of 2019.[7] However, in December of 2019, the General

_____

[7] At that time, the Sentencing Code classified probation and CIP as different sentencing alternatives. *See* 42 Pa.C.S. § 9721(a)(1), (6) (listing "[a]n order of probation" and "county intermediate punishment" as separate sentencing alternatives available to the trial court), subsection (a)(6) *repealed by* Act of
*(Footnote Continued Next Page)*

Assembly amended the Sentencing Code to reclassify CIP as a type of probation.[8]  **See** 42 Pa.C.S. § 9804(a) (providing that "[c]ounty intermediate punishment programs are restrictive conditions of probation"), *as amended by* Act of Dec. 18, 2019, P.L. 776, No. 115.

Further, at the time the trial court revoked Appellant's probation in 2021, this Court's case law permitted anticipatory revocations of probation. **See, e.g.**, **Commonwealth v. Wendowski**, 420 A.2d 628, 630 (Pa. Super. 1980) (holding that "[i]f, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such nature as to demonstrate to the trial court that he is unworthy of probation . . . the trial court could revoke or change the order of probation" (citations omitted)).

_____

Dec. 18, 2019, P.L. 776, No. 115; **see also Commonwealth v. Wegley**, 829 A.2d 1148, 1153 (Pa. 2003) (observing that, under the prior version of the Sentencing Code, CIP was "a distinct, and more severe, sanction than traditional probation").

[8] Additionally, the General Assembly repealed the statute authorizing a trial court to revoke a CIP sentence.  **See** 42 Pa.C.S. § 9773, *repealed by* Act of Dec. 18, 2019, P.L. 776, No. 115.  Nevertheless, our Supreme Court has observed that because CIP is now classified as a form of probation, 42 Pa.C.S. § 9771 (modification or revocation of order of probation), authorizes a trial court to revoke a CIP sentence.  **See Commonwealth v. Hoover**, 231 A.3d 785, 790 (Pa. 2020) (plurality).

However, in **Simmons**,[9,10] an *en banc* panel of this Court overruled

**Wendowski** and its progeny, explaining:

> Simply stated, **Wendowski** was incorrect in holding that a trial court may anticipatorily revoke an order of probation and in reasoning that "a term of probation may and should be construed for revocation purposes as including the term beginning at the time probation is granted." **Wendowski**, 420 A.2d at 630 (quotations omitted). No statutory authority exists to support this understanding. Rather, the plain language of the relevant statutes provides that: a trial court may only revoke an order of probation "upon proof of the violation of specified conditions of the probation;" the "specified conditions" of an order of probation are attached to, or are a part of, the order of probation; and, when the trial court imposes an "order of probation" consecutively to another term, the entirety of the "order of probation" — including the "specified conditions" — do not begin to commence until the prior term ends.

---

[9] **Simmons** was decided after Appellant filed his notice of appeal. It is well settled that "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." **Commonwealth v. Chesney**, 196 A.3d 253, 257 (Pa. Super. 2018) (citations omitted and formatting altered).

[10] We note that the Commonwealth did not file a petition for allowance of appeal to our Supreme Court after this Court announced its decision in **Simmons**. However, our Supreme Court subsequently granted the Commonwealth's petition for review in an unrelated matter, which directly implicates our holding in **Simmons**. **See Commonwealth v. Rosario**, 271 A.3d 1285 (Pa. 2022) (granting the Commonwealth's petition for allowance of appeal to consider whether the **Simmons** Court erred in holding that trial courts lack the statutory authority to anticipatorily revoke a defendant's probation that has not yet commenced). In any event, we remain bound by **Simmons** "as long as the decision has not been overturned by our Supreme Court." **Commonwealth v. Reed**, 107 A.3d 137, 143 (Pa. Super. 2014) (citations omitted).

***Simmons***, 262 A.3d at 524-25 (footnote omitted); ***see also K. Conley***, 266 A.3d at 1140 (concluding that "under ***Simmons***, [the defendant] was not yet required to comply with the probation portion of the imposed order of sentence before he began serving it; thus, his noncompliance did not permit the anticipatory revocation of his order of probation"). The ***Simmons*** Court vacated the defendant's sentence and remanded the case with instructions for the trial court to reinstate the original order of probation. ***Simmons***, 262 A.3d at 527; ***see also K. Conley***, 266 A.3d at 1140.

Although this Court has not yet applied ***Simmons*** in matters where the defendant is serving multiple, consecutive terms of probation,[11] we conclude that the same rationale applies in the instant case. Here, the trial court revoked Appellant's CIP sentence and anticipatorily revoked his consecutive probation sentences, which he had not yet begun to serve.[12,13] However, because Appellant had not yet begun serving his consecutive terms of probation at the time he violated the conditions of his CIP, he was not yet required to comply with the conditions of his consecutive terms of probation.

---

[11] As noted above, a CIP sentence is now considered a form of probation with restrictive conditions.

[12] As stated above, Appellant's original probationary sentence was composed of three consecutive terms of probation: two years for count two, nine months for count four, and three months for count six. The trial court also sentenced Appellant to a term one year of probation for count three, concurrent to count two.

[13] The trial court did not address the applicability of ***Simmons*** in its Rule 1925(a) opinion.

*See Simmons*, 262 A.3d at 525 (explaining that "when the trial court imposes an 'order of probation' consecutively to another term, the entirety of the 'order of probation' — including the 'specified conditions' [of probation] — do not begin to commence until the prior term ends" (footnote omitted)). Therefore, we conclude that the trial court lacked the statutory authority to anticipatorily revoke Appellant's consecutive terms of probation. Accordingly, we are constrained to vacate the July 15, 2021 judgment of sentence and remand for the trial court to reinstate the original February 13, 2019 orders imposing consecutive terms of probation. *See id.* at 527.

**Merger**

Appellant also argues that his conviction for count two: terroristic threats, graded as a misdemeanor of the third degree, should merge with his conviction for count one: terroristic threats, graded as a felony of the first degree. Appellant's Brief at 13-16. Appellant contends that all of the elements of required for his misdemeanor terroristic threats conviction are included in his conviction for felony terroristic threats, which has the additional element of causing "the occupants of the building . . . to be diverted from their normal or customary operations . . . ." *Id.* at 14-15 (quoting 18 Pa.C.S. § 2706). Appellant contends that because he committed a single act, these two offenses should have merged. *Id.* at 13, 15-16 (citing, *inter alia*, 42 Pa.C.S. § 9765).

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." *Martinez*, 153 A.3d at 1029-30 (citation omitted).

Section 9765 of the Sentencing Code provides that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

This Court has explained, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Martinez**, 153 A.3d at 1030 (citations omitted).

"If the offenses stem from two different criminal acts, merger analysis is not required." **Commonwealth v. Williams**, 958 A.2d 522, 527 (Pa. Super. 2008) (citation omitted).

The **Martinez** Court further explained:

When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a "break in the chain" of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth.

**Martinez**, 153 A.3d at 1030-31 (citations omitted and formatting altered).

Terroristic threats is defined, in relevant part, as follows:

**(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

\* \* \*

**(d) Grading.**—An offense under subsection (a) constitutes a misdemeanor of the first degree unless the threat causes the occupants of the building . . . to be diverted from their normal or customary operations, in which case the offense constitutes a felony of the third degree.

18 Pa.C.S. § 2706(a)(1), (d).

In ***Commonwealth v. Burkhart***, 1916 MDA 2019, 2020 WL 6778766 (Pa. Super. filed Nov. 18, 2020) (unpublished mem.),[14] a panel of this Court examined whether a misdemeanor count of terroristic threats merged with a felony count of terroristic threats. ***Burkhart***, 2020 WL 6778766, at \*4-7. In that case, a hospital was placed on lockdown after the defendant made threats to hospital staff, telling staff that he had previously 'done time in jail,' and he would have his motorcycle gang come to the hospital to 'make things ugly [.]" ***Id.*** at \*1. The defendant was convicted of two counts of terroristic threats, one graded as a felony of the third degree and one graded as a misdemeanor of the first degree. ***Id.*** On appeal, the defendant argued that his sentences for the two counts of terroristic threats should have merged. ***Id.*** at \*2. This

---

[14] We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value. ***See*** Pa.R.A.P. 126(b).

- 12 -

Court explained that "it is undisputed that all of the elements of the misdemeanor-graded terroristic threats offense are included within the felony-graded offense." *Id.* at *5. The *Burkhart* Court examined the amended criminal information to determine if the charges involved identical conduct by the defendant. *Id.* at *5-7. This Court concluded that because both counts alleged "identical conduct in the amended criminal information, and nothing in the record suggests that the jury considered separate conduct as the factual basis for each offense," the defendant's misdemeanor terroristic threats conviction should have merged with his felony terroristic threats conviction. *Id.* at *7.

Here, the Commonwealth charged Appellant as follows:

[COUNT ONE:]

. . . on or about June 28, 2018, in the said County of Erie and [Commonwealth] of Pennsylvania, the said [Appellant] did otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience, to-wit: the said [Appellant] did state to the victim Andrea Delsandro, he was going to kill her and/or her new born infant and/or her father at a time when there was an active PFA in place causing the hospital staff to relocate the victim as a patient to another room and floor and/or the hospital occupants to be diverted from their existing operations . . . thereby the said [Appellant] did commit the crime of terroristic threats, a felony of the third degree. [18 Pa.C.S. § 2706(a)(1).]

COUNT TWO:

. . . that on the day and year aforesaid in the said County of Erie and [Commonwealth] of Pennsylvania, the said [Appellant] did communicate, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another, to-wit: the said [Appellant] did state he was going to kill victim Andrea Delsandro's new born infant and/or her father and bury him

- 13 -

and/or that he would go get his guns and blow off the victim's head . . . thereby the said [Appellant] did commit the crime of terroristic threats, a misdemeanor of the first degree. [18 Pa.C.S. § 2706(a)(1)].

Criminal Information, 8/23/18, at 1 (formatting altered); *see also id.* at 4 (setting forth the statutes under which the Commonwealth charged Appellant).

The trial court did not address the issue of merger in either its June 12, 2019 Rule 1925(a) opinion for Appellant's direct appeal nor in its December 20, 2021 Rule 1925(a) opinion for the instant appeal. However, in its June 12, 2019 Rule 1925(a) opinion, the trial court concluded that the same evidence was sufficient to sustain Appellant's terroristic threats convictions at counts one and two. *See* Trial Ct. Op., 6/12/19, at 10-11.

Based on our review of the record, it is clear that the Commonwealth charged Appellant for identical conduct at counts one and two of the criminal information. Specifically, both charges describe the incident in which Appellant threatened to kill the victim, her newborn child, and her father. *See* Criminal Information, 8/23/18, at 1; *see also* Trial Ct. Op., 6/12/19, at 10-11 (discussing the identical evidence for counts one and two). Therefore, we conclude that Appellant's convictions arose from the same criminal act. *See Martinez*, 153 A.3d at 1030-31; *see also Burkhart*, 2020 WL 6778766 at *7. Further, all of the statutory elements of misdemeanor terroristic threats are included in the statutory elements of felony terroristic threats. *See* 18 Pa.C.S. § 2706(a)(1), (d); *see also Burkhart*, 2020 WL 6778766 at *5. For

these reasons, we conclude that Appellant's misdemeanor terroristic threats conviction should have merged with the felony count for sentencing purposes. *See Martinez*, 153 A.3d at 1030. Although we do not disturb Appellant's conviction for misdemeanor terroristic threats, we vacate the sentence imposed on count two. *See, e.g.*, *Tucker*, 143 A.3d at 968 (affirming the defendant's convictions but vacating an illegal sentence).

For these reasons, we vacate the judgment of sentence and remand for resentencing consistent with this opinion.[15] *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) (stating that if this Court's "disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan" (citation omitted)).

Judgment of sentence vacated. Case remanded for resentencing with instructions to reinstate the original orders of probation except as to count two, consistent with our disposition that count two merges with count one for purposes of sentencing. Jurisdiction relinquished.

_____

[15] In light of our disposition, we decline to address Appellant's claim regarding the discretionary aspects of his sentence. *See Commonwealth v. Barnes*, 167 A.3d 110, 125 n.13 (Pa. Super. 2017) (*en banc*) (concluding that when this Court remands a matter for resentencing, the Court "need not address" the defendant's challenge to the discretionary aspects of his sentence, and stating that "[w]hen a sentence is vacated and the case remanded for resentencing, the sentencing judge should start afresh" (citation omitted)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022