J-S23033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KEVIN BROGDEN | : | |
| Appellant | : | No. 2940 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001647-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KEVIN BROGDEN | : | |
| Appellant | : | No. 2941 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001648-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KEVIN BROGDEN | : | |
| Appellant | : | No. 2942 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001649-2019

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 27, 2024**

Appellant, Kevin Brogden, appeals from the judgments of sentence imposed by the Court of Common Pleas of Philadelphia County in three criminal cases, CP-51-CR-0001647-2019 (CR-1647-2019), CP-51-CR-0001648-2019 (CR-1648-2019), and CP-51-CR-0001649-2019 (CR-1649-2019), following a consolidated jury trial at which he was convicted of two counts of third-degree murder and one count each of aggravated assault, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia.[1]  For the reasons set forth below, we affirm Appellant's convictions in all three cases, vacate his sentence for third-degree murder in CR-1647-2019 and remand for resentencing on that conviction, and affirm his judgment of sentence in all other respects.

These cases arise out of the shooting of three individuals, Stephanie Rann (Victim 1), Efrain Rivera (Victim 2), and another woman (Victim 3) in Philadelphia, Pennsylvania on January 7, 2019.  In the early morning hours of January 7, 2019, Victim 1, Victim 2, and Victim 3 drove from Delaware to Philadelphia to purchase heroin from Appellant.  Trial Court Opinion at 2; N.T. Trial, 11/8/22, at 43, 45-49, 59, 98.  After they arrived at the place where

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), 6106(a)(1), and 6108, respectively.

- 2 -

they were to meet Appellant, Appellant got in the car and gave Victim 1, the driver, five bundles of heroin. Trial Court Opinion at 4; N.T. Trial, 11/8/22, at 47-52, 101-02, 111. After Appellant gave Victim 1 the bundles of heroin, Victim 2 and Appellant got into a verbal and physical altercation about money. Trial Court Opinion at 2, 4; N.T. Trial, 11/8/22, at 52-54, 67-68, 102-03, 111. Appellant then fired several gunshots that struck Victim 1, Victim 2, and Victim 3 and ran off. Trial Court Opinion at 2, 4; N.T. Trial, 11/8/22, at 43, 46-47, 54-57, 68-69, 112, 178. Victim 3 was able to escape and seek help and was later treated for a gunshot wound to her left shoulder. Trial Court Opinion at 2. Victim 1, who had been shot in the head, and Victim 2, who had been shot in the torso, both died from their gunshot wounds. *Id.* Victim 3 identified Appellant as the shooter in a photo array on January 11, 2019, four days after the shooting. *Id.*; N.T., 10/28/22, at 7-8, 25, 38-40, 49, 54-56, 61-63, 77-82; N.T. Trial, 11/8/22, at 69-71.

Appellant was arrested on January 14, 2019, and was charged in three separate criminal informations. In CR-1647-2019, Appellant was charged with the murder of Victim 1, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia. Appellant was charged with the murder of Victim 2 in CR-1648-2019 and with aggravated assault for the shooting of Victim 3 in CR-1649-2019. Victim 3 was unable to identify Appellant at an in-person lineup on February 25, 2019, but identified him as the shooter at Appellant's preliminary hearing on March 5, 2019. N.T. Trial,

11/8/22, at 71-73, 160-62.    On April 4, 2019, Appellant filed a motion to suppress Victim 3's identification of him on the ground that the photo array was impermissibly suggestive.   Following a hearing on October 28, 2022, the trial court denied Appellant's motion to suppress Victim 3's identification. N.T., 10/28/22, at 96.    In August 2022, the Commonwealth moved to introduce at trial the preliminary hearing testimony of one of its witnesses, Joseph Volpe, who had died in September 2021.    Trial Court Opinion at 44. Following two hearings on this motion, the trial court granted the motion to introduce Volpe's preliminary hearing testimony.  *Id.* at 44-47; N.T., 9/2/22, at 51-52.

All three cases were tried to a jury from November 7 to November 18, 2022.   At trial the Commonwealth presented the testimony of 19 witnesses, including Victim 3 and Volpe's preliminary hearing testimony.   Trial Court Opinion at 3.   Victim 3 testified to the events surrounding the shootings and identified Appellant as the shooter.   N.T. Trial, 11/8/22, at 43, 45-59, 67-69, 98, 101-03, 111-12, 178.   Volpe testified that he bought heroin with the stamp 5050 from Appellant beginning in December 2018, that the phone number that communicated with Victim 1's phone immediately before the murders was Appellant's phone number, and that on January 7, 2019, after the murders had occurred, Appellant changed from that phone number to a different phone number.   N.T. Trial, 11/9/22, at 117-18, 120, 124-26, 129.    Volpe also testified that Appellant told him that Appellant changed his phone number

because "it was hot and he didn't want to be tracked by the number" and that on January 8, 2019, Appellant asked to come and stay with Volpe and stayed with him for three days because it was "hot" where Appellant lived. *Id.* at 120-22, 126, 128.

Other witnesses also identified the phone number that communicated with Victim 1's phone immediately before the murders as a phone number that Appellant had at that time, and the Commonwealth introduced evidence that the communications between Victim's 1's phone and that phone before the murders concerned arrangements to buy drugs. Trial Court Opinion at 8-9, 12-13, 19. In addition, the Commonwealth introduced other evidence that Appellant changed his phone number after the murders and evidence that most of the baggies of drugs found by police in Victim 1's car on January 7, 2019 had the stamp 5050. *Id.* at 7-9, 12-13. A statement from Appellant's girlfriend was admitted at trial in which she said that Appellant was out of the house for about 10 minutes around the time of the murders and that he had a look of fear in his face and did not look right when he returned. *Id.* at 10.

On November 18, 2022, the jury acquitted Appellant of first-degree murder, but found him guilty of third-degree murder for killing Victim 1, third-degree murder for killing Victim 2, aggravated assault for wounding Victim 3, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia. N.T. Trial, 11/18/22, at 4-9. On November 21, 2022, the trial court sentenced Appellant to life imprisonment without parole for both

third-degree murder convictions and imposed a consecutive sentence of 4 to 8 years for aggravated assault and concurrent sentences of $1^1/_2$ to 3 years and 1 to 2 years for the firearms offenses. N.T. Sentencing at 47-48; Sentencing Orders. This timely appeal followed.

Appellant raises the following two issues in this appeal.

1. Did the court err and abuse its discretion by admitting unavailable witness Joseph Volpe's preliminary hearing testimony and text messages?

2. Did the court err and abuse its discretion by denying [Appellant's] motion to suppress [Victim 3's] identification resulting from an unnecessarily suggestive photo array?

Appellant's Brief at 6 (suggested answers omitted).

Appellant argues in his first issue that the admission of Volpe's preliminary hearing testimony violated his right under the Sixth Amendment to the United States Constitution to be confronted with the witnesses against him. Admission of the preliminary hearing testimony of a witness who is unavailable at trial is permissible under Rule 804(b)(1) of the Pennsylvania Rules of Evidence and does not violate the defendant's constitutional right of confrontation if the defendant was represented by counsel at the preliminary hearing and had a full and fair opportunity to cross-examine the witness at the preliminary hearing. *Commonwealth v. Grush*, 295 A.3d 247, 251-52 (Pa. Super. 2023); *Commonwealth v. Mitchell*, 152 A.3d 355, 358-59 (Pa. Super. 2016); *Commonwealth v. Leak*, 22 A.3d 1036, 1043-47 (Pa. Super. 2011).

If the defendant was not denied vital impeachment evidence with respect to the witness at the time of the preliminary hearing and his counsel's cross-examination of the witness was not restricted, a full and fair opportunity to cross-examine existed and admission of the unavailable witness's preliminary hearing testimony does not violate the defendant's right of confrontation. *Grush*, 295 A.3d at 252-57; *Commonwealth v. Leaner*, 202 A.3d 749, 775 (Pa. Super. 2019); *Leak*, 22 A.3d at 1044-46. "The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing as extensively as he might have done at trial." *Leaner*, 202 A.3d at 775 (quoting *Leak*). The burden is on the defendant to show that he was denied vital impeachment evidence at the time of the preliminary hearing. *Leaner*, 202 A.3d at 775; *Leak*, 22 A.3d at 1044.

The record shows that Appellant had a full and fair opportunity to cross-examine Volpe at the preliminary hearing. Appellant was represented by counsel at the preliminary hearing and had received Volpe's criminal record and statement to police before the preliminary hearing. N.T. Preliminary Hearing at 2, 5, 7; N.T., 8/24/22, at 9-12; N.T., 9/2/22, at 45, 49, 51. Appellant's counsel was also aware that the Commonwealth was seeking to preserve Volpe's testimony for possible use for trial and cross-examined him at length and without restriction. N.T. Preliminary Hearing at 6, 84-99.

The only items that Appellant claims that are impeachment evidence that he did not have at the time of the preliminary hearing are text messages between Appellant and Volpe that the Commonwealth introduced or sought to introduce at trial. Appellant's Brief at 24, 26-27.[2] The failure to disclose these text messages before Appellant cross-examined Volpe at the preliminary hearing does not constitute grounds for exclusion of Volpe's preliminary hearing testimony. The fact that the defendant did not have all the information concerning the witness that was known at trial does not constitute a denial of a full and fair opportunity to cross-examine the witness unless the later disclosed information is sufficiently additionally damaging to the witness's credibility beyond the evidence concerning the witness at the preliminary hearing so as to constitute vital impeachment evidence. **Grush**, 295 A.3d at 256-59 (late disclosure of information concerning witness's criminal history did not bar admission of preliminary hearing testimony where witness admitted that he had a criminal history at the preliminary hearing and any additional impeachment value could be obtained by introduction of

_____

[2] Appellant also did not have Volpe's videotaped affirmation of his statement before the preliminary hearing, but it was undisputed that the video affirmation simply showed Volpe confirming that the statement was his and was signed by him and added nothing beyond the statement itself, which Appellant had before he cross-examined Volpe at the preliminary hearing. N.T., 8/24/22, at 50-53; N.T., 9/2/22, at 45-46, 48-49, 51. Appellant does not argue in his brief that the failure to provide the video affirmation denied him a full and fair opportunity to cross-examine Volpe at the preliminary hearing.

criminal history at trial); *Leaner*, 202 A.3d at 777 n.10 (fact that defendant did not have other witness's statement at preliminary hearing did not bar admission of preliminary hearing testimony where other witness's statement was not inconsistent with unavailable witness's preliminary hearing testimony); *Leak*, 22 A.3d at 1045-46 (fact that defendant did not have unavailable witness's medical records at preliminary hearing did not bar admission of preliminary hearing testimony where those documents did not show inconsistency).

Here, there is no showing that any of the text messages would have provided any basis for impeachment of Volpe beyond what was brought out at the preliminary hearing. The text messages concerned Appellant's drug sales to Volpe and requests by Appellant to Volpe for assistance in hiding or obtaining false identification papers. N.T. Trial, 11/15/22, at 175-92, 260-74. The fact that Volpe was a drug user who bought drugs from Appellant was thoroughly explored in Volpe's preliminary hearing testimony. N.T. Trial, 11/9/22, at 117-19, 124, 130-34, 139, 145-46. Appellant's attempt to obtain false identification papers from Volpe was also disclosed before the preliminary hearing, and Volpe was examined at his preliminary hearing on that subject and admitted that he told Appellant that he could get Appellant a fake ID. *Id.* at 128, 144.

Appellant points to nothing about the texts that would have impeached Volpe's credibility, let alone that would rise to the level of vital impeachment

evidence. To the contrary, the texts were consistent with and corroborated Volpe's testimony. Moreover, the texts were from a phone that was in Appellant's possession at the time of his arrest, not from Volpe's phone or a third-party's phone, N.T. Trial, 11/15/22, at 41-50, 254-61, and would thus be information known to him before the preliminary hearing. Appellant therefore did not satisfy his burden of showing that he was denied vital impeachment evidence at the time of the preliminary hearing, and the trial court did not err in allowing the Commonwealth to introduce Volpe's preliminary hearing testimony at trial. **Grush**, 295 A.3d at 256-59; **Leaner**, 202 A.3d at 775, 777 n.10; **Leak**, 22 A.3d at 1044-46.

Appellant also argues in his brief that the trial court erred in admitting the text messages. Appellant's Brief at 23-24, 27. That issue, however, is not before us because Appellant waived any challenge to the admission of the text messages. While Appellant objected to the admission of the texts at trial, N.T. Trial, 11/15/22, at 175-90, he did not include any claim of error concerning their admission in the statement of errors complained of on appeal that he filed in response to the trial court's Pa.R.A.P. 1925(b) order. Appellant listed 11 issues in his Rule 1925(b) statement, including the claims argued in this appeal that the trial court erred in admitting Volpe's preliminary hearing testimony and in not suppressing Victim 3's identification of him. None of the 11 issues set forth in Appellant's Rule 1925(b) statement references text messages or evidence from telephones at all. Statement of Errors Complained

of on Appeal. The only claim of error that referenced Volpe stated in its entirety: "The trial court erred by admitting preliminary hearing testimony of unavailable witness Joseph Volpe." *Id.* ¶6. Having failed to raise any issue concerning admission of the text messages in his Rule 1925(b) statement, Appellant is barred by waiver from challenging the admission of that evidence in this appeal. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) statement] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); ***Commonwealth v. Garland***, 63 A.3d 339, 342 (Pa. Super. 2013).

Appellant argues in his second issue that the trial court erred in denying his motion to suppress Victim 3's identification of him as the shooter. Our review of the denial of a motion to suppress an identification is limited to determining whether the trial court's factual findings on the suppression motion are supported by the record and whether the legal conclusions that it drew from those facts are correct. ***Commonwealth v. Mbewe***, 203 A.3d 983, 986 (Pa. Super. 2019). Determination of the credibility of the witnesses who testify with respect to such a motion to suppress is a matter for the trial court, and we are bound by its factual findings where those findings are supported by the record. ***Commonwealth v. Jaynes***, 135 A.3d 606, 610 (Pa. Super. 2016)

This issue merits no relief. Identification evidence will not be suppressed unless the identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification. ***Commonwealth v. Johnson***, 139 A.3d 1257, 1278 (Pa. 2016); ***Mbewe***, 203 A.3d at 986; ***Commonwealth v. Fulmore***, 25 A.3d 340, 346 (Pa. Super. 2011). The photographs in a photo array that is presented to a witness are not unduly suggestive if the suspect's picture does not stand out more than the others and the people depicted all have similar facial characteristics. ***Commonwealth v. Bishop***, 266 A.3d 56, 63 (Pa. Super. 2021); ***Mbewe***, 203 A.3d at 986-97; ***Fulmore***, 25 A.3d at 346. The fact that the witness did not identify the defendant in another pretrial photo array or lineup or that the witness is not completely certain in her initial identification is not grounds for suppression where the identification is not shown to be the product of an unduly suggestive identification procedure. ***Johnson***, 139 A.3d at 1278.

The record here shows that the photo array in which Victim 3 identified Appellant was not unduly suggestive. Two detectives were present, Detective Farley and Detective Whalen. N.T., 10/28/22, at 7-8, 49. Detective Farley showed six photographs to Victim 3. ***Id.*** at 8, 11, 51-57, 77-79; Commonwealth Ex. 16a. All of the photographs are head shots of African American males with similar facial features and hair and are similar in size and background. Commonwealth Ex. 16a at 4-9. The person in each photograph is wearing a dark shirt with no distinctive markings in the limited portion of his clothing that appears in the photograph. ***Id.***

Detective Farley asked Victim 3, when he showed each photograph, whether she recognized the person in the photograph. N.T., 10/28/22, at 54, 77; Commonwealth Ex. 16a at 2-3. When she was shown the first photograph, Victim 3 responded "No." N.T., 10/28/22, at 54; Commonwealth Ex. 16a at 2. When she was shown the second photograph, which was a photograph of Appellant, Victim 3 responded "Yes. He looks like the guy, I want to see all six photos." N.T., 10/28/22, at 38, 54-55, 61-62, 78-81; Commonwealth Ex. 16a at 2. Neither detective said anything about the second photograph before Victim 3 made her identification. N.T., 10/28/22, at 43-44, 57, 80. Detective Farley then proceeded to ask Victim 3 whether she recognized the person in each of the other photographs and Victim 3 responded "No" with respect to the third and fourth photographs and "No, definitely not him" with respect to the fifth and sixth photographs. N.T., 10/28/22, at 55, 62; Commonwealth Ex. 16a at 2-3. After showing Victim 3 all six photographs, Detective Farley asked Victim 3 if she was confident that the person in the second photograph was the person that committed the shooting, and her response was "He looks like him." N.T., 10/28/22, at 55, 62-63, 81-82; Commonwealth Ex. 16a at 2.

Appellant argues that the photo array was suggestive because the photo array was conducted in violation of a Philadelphia Police directive for double-blind administration of such identifications, because Detective Whalen told Victim 3 that the array would include a photo of the suspect, and because

Appellant was wearing a different type of shirt than the men in the other photographs. None of these arguments has merit.

The mere fact that the photo array violated a police procedure for double-blind administration does not make it impermissibly subjective. **Bishop**, 266 A.3d at 63. Although both detectives were familiar with the case and Detective Whalen had assembled the photo array and knew which photograph was Appellant's, Detective Whalen did not show Victim 3 the photographs or say anything to Victim 3 about the photographs. N.T., 10/28/22, at 8-16, 23-25, 37-38, 43-44, 50-51, 54. Detective Farley, who administered the photo array, testified that he did not know which photograph was the suspect's photograph. N.T., 10/28/22, at 51-57, 60. In addition, Victim 3 testified that no indication was given to her that the second photograph was the suspect's picture. **Id.** at 80. The trial court therefore properly concluded that the detectives' involvement in the case was not a ground for suppression of Victim 3's identification.

Appellant's other arguments likewise fail. The statement that Detective Whalen testified that he made to Victim 3 about the array was that the police "were going to show her a photo array of pictures with the suspect in there" or that "I have photos to show you, and the suspect could be in the photo" and was made to her when he was making arrangements to set up the array, not when she was looking at the pictures. N.T., 10/28/22, at 21-23, 43, 46. Victim 3 testified that she was just told "to look at the pictures and see if I

recognized anybody" and was not told that the suspect "would necessarily be in there." N.T., 10/28/22, at 77, 84. In any event, a statement that the suspect's picture is among the photographs in the array, without any indication of which photograph that is, does not make an identification procedure impermissibly suggestive. **Fulmore**, 25 A.3d at 347-48. Indeed, this Court has noted that a witness would normally assume that the suspect's picture is included in any photo array because "why else would a victim be shown a photo array unless the police believed the suspect's photo was included." **Id.** at 348.

Although Appellant's shirt appears to be collared and the shirts in the other photographs are not, that does not invalidate the photo array. Minor differences in the photographs do not make a photo array unduly suggestive. **Commonwealth v. Kendricks**, 30 A.3d 499, 504 (Pa. Super. 2011); **Commonwealth v. Burton**, 770 A.2d 771, 782 (Pa. Super. 2001), **overruled on other issue by Commonwealth v. Mouzon**, 812 A.2d 617 (Pa. 2002). The shirts in the other photographs do not all look identical and the slight difference in type of shirt did not make Appellant's picture more distinctive or striking in appearance than the other five. Commonwealth Ex. 16a at 4-9.

Although neither of the two issues raised by Appellant merits relief, an additional issue is before us concerning Appellant's sentence. Both the trial court and the Commonwealth assert that Appellant's life imprisonment

sentence for third-degree murder in CR-1647-2019 is an illegal sentence and request that we vacate that sentence and remand for resentencing on that one conviction. Trial Court Opinion at 1, 39, 42-43; Commonwealth's Brief at 6, 9. We agree.

> Section 9715 of the Sentencing Code provides that
>
> any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9715(a). This mandatory life sentence applies where the first murder or voluntary manslaughter conviction occurred at the same trial as the conviction for which life imprisonment was imposed. ***Commonwealth v. Coleman***, 285 A.3d 599, 608-14 (Pa. 2022); ***Commonwealth v. Morris***, 958 A.2d 569, 578-82 (Pa. Super. 2008) (*en banc*). Because the jury convicted Appellant of the third-degree murder of Victim 1 before it convicted him of the third-degree murder of Victim 2 in CR-1648-2019, N.T. Trial, 11/18/22, at 4-5, the trial court properly imposed a life sentence for the third-degree murder conviction in CR-1648-2019.

Appellant, however, had no prior conviction for third-degree murder or manslaughter before his trial in this case. N.T. Sentencing at 7, 9. Appellant therefore had not "previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime" when he was found guilty of the third-degree murder of

Victim 1 in CR-1647-2019, and Section 9715 cannot apply to that conviction. Unless 9715 of the Sentencing Code applies, the maximum penalty for third-degree murder is 40 years' imprisonment. 18 Pa.C.S. § 1102(d). The sentence of life imprisonment in CR-1647-2019 is therefore an illegal sentence as it exceeds the statutory maximum for the offense.

Although Appellant did not challenge this sentence, the issue of whether a sentence is illegal is not subject to waiver and may be addressed even where the appellant has not raised the issue. *Commonwealth v. Conley*, 286 A.3d 313, 316 (Pa. Super. 2022); *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 889 (Pa. Super. 2019); *Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa. Super. 2013). We accordingly vacate Appellant's third-degree murder sentence in CR-1647-2019. Because Appellant's life sentences in CR-1647-2019 and CR-1648-2019 were concurrent, CR-1648-2019 Sentencing Order, and the trial court specifically noted that vacating the life sentence in CR-1647-2019 would not disturb its sentencing scheme, Trial Court Opinion at 39, 43, we need not vacate any of the other sentences that the trial court imposed.

For the foregoing reasons, we affirm Appellant's convictions in all three cases, vacate his sentence for third-degree murder in CR-1647-2019, remand for resentencing on that conviction, and affirm his judgment of sentence in all other respects.

Judgments of sentence in CP-51-CR-0001648-2019 and CP-51-CR-0001649-2019 affirmed. Judgments of sentence in CP-51-CR-0001647-2019 for carrying a firearm without a license and carrying a firearm on the public streets of Philadelphia affirmed. Judgment of sentence in CP-51-CR-0001647-2019 for third-degree murder vacated and case remanded for resentencing on third-degree murder conviction. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024